UNITED STATES, Appellee,

v.

Michael J. McCARTHY, Specialist Four, U. S. Army, Appellant.

No. 30,560.
CM 432875.

U. S. Court of Military Appeals.

Sept. 24, 1976.

*Captain John Richards Lee* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain Ronald Lewis Gallant,* and *Captain John C. Carr.*

*Captain Keith H. Jung* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner,* and *Captain Joel M. Martel.*

Opinion of the Court

FLETCHER, Chief Judge:

On this appeal, the accused challenges the jurisdiction of the general court-martial which tried him for wrongfully transferring 3 pounds of marihuana to a fellow soldier "just outside" gate 3 of Fort Campbell, Kentucky. He contends that the offense is not service connected as that term was explained in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). *See also Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). We disagree.

During this Court's past term, we have spelled out on several occasions the inquiry which must precede resolution of a question of military jurisdiction. Most recently, Judge Perry writing for the Court in *United States v. Hedlund,* 2 M.J. 11 (1976) (footnotes omitted), expressed it this way:

A careful reading of *Relford* is necessary for an appreciation and understanding of the approach the Court was setting out for applying the *O'Callahan* standard. An isolation of a single passage will not suffice to this end.

. . . . .

After quoting a lengthy passage from Justice Douglas' majority opinion in *O'Callahan,* the *Relford* Court extracted therefrom the oft-cited 12 criteria by which service connection may be measured:

We stress seriatim what is thus emphasized in the holding:
1. The serviceman's proper absence from the base.
2. The crime's commission away from the base.
3. Its commission at a place not under military control.
4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
6. The absence of any connection between the defendant's military duties and the crime.
7. The victim's not being engaged in the performance of any duty relating to the military.
8. The presence and availability of a civilian court in which the case can be prosecuted.
9. The absence of any flouting of military authority.
10. The absence of any threat to a military post.
11. The absence of any violation of military property.
One might add still another factor implicit in the others.

12. The offense's being among those traditionally prosecuted in civilian courts.

. . . . . .

Thus we conclude that there is no support in the *Relford* opinion for concluding, simply because the Supreme Court held as always service connected an offense committed by a member of the military community against a person (military or civilian) within or at the geographical boundary of a post or against property on the base, that the Court implicitly sanctioned jurisdiction predicated solely upon the military status of both the wrongdoer and the victim.

In a similar vein, we held in *United States v. Moore,* 1 M.J. 448 (1976) that—

What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our providence to formulate such a test.

■ The sort of inquiry we believe must precede resolution of service connection issues also is illustrated in *United States v. Tucker,* 1 M.J. 463 (1976); *United States v.*

*Uhlman,* 1 M.J. 419 (1976); and *United States v. Black,* 1 M.J. 340 (1976). This case is no different. Merely because the recipient of the contraband was a soldier is insufficient, in and of itself, to establish service connection. *United States v. Hedlund, supra; United States v. Moore, supra.* The issue requires careful balancing of the *Relford* factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).[1]

■ The trial transcript reflects that Specialist McCarthy had become acquainted with a soldier named Sinclair through the military unit of which the accused was the training NCO. Knowing that Sinclair was a "hustler," an individual who sells drugs, and because he needed money, the accused took advantage of "a chance to make $75" by selling Sinclair 3 pounds of marihuana. The physical transfer actually took place in Montgomery County, Tennessee, "just outside" gate 3 of Fort Campbell, Kentucky. Although the facts are sketchy since the jurisdictional question was not addressed at trial, it appears from the testimony[2] that

1. This evaluation first should be performed by the trial judge, preferably on the record. The Court of Military Review then should reevaluate the trial judge's findings; and, if need be, this Court again will review the matter. However, in an important constitutional area such as this, it is particularly alarming to review on a daily basis trial proceedings and Court of Military Review decisions which contain nothing more than a perfunctory conclusion that a court-martial has or lacks jurisdiction. While such an approach undoubtedly was fostered by our own prior analytical shortcomings in this area, recent decisions of this Court should suggest that we no longer believe *O'Callahan* questions should be treated in such a cursory manner.

2. As jurisdiction is a matter to be established affirmatively by the Government at trial, *cf. United States v. Russo,* 23 U.S.C.M.A. 511, 513, 50 C.M.R. 650, 652, 1 M.J. 134, 136 (1975);

*United States v. Graham,* 22 U.S.C.M.A. 75, 77, 46 C.M.R. 75, 77 (1972), we view our decision in *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973) as barring resort to the Article 32, 10 U.S.C. § 832 investigation to *resolve* the jurisdictional issue before us. As is true with matters affecting the accused's guilt or innocence, evidence bearing upon the jurisdiction of a court-martial also should be subject to cross-examination before it is adopted by an appellate tribunal to dispose of a contested issue, in the absence of a stipulation by the parties. *See United States v. Lanford,* 6 U.S.C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955); *cf. United States v. Wilson,* 1 M.J. 325, 329 n. 16 (1976). While evidence from outside the record may be considered on jurisdictional questions, we believe such use should be limited to determining whether a rehearing to gather additional evidence is warranted. *See United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R.

the drug transaction actually was arranged in the accused's unit on post even though the physical transfer occurred in the civilian community.

Examination of the *Relford* criteria leads us to conclude that the four factors weighing in favor of military jurisdiction in this instance were sufficient to vest the court-martial with jurisdiction over the marihuana transfer offense. These factors include:

1. The formation of the criminal intent for the offense on-post.

2. The substantial connection between the defendant's military duties and the crime.

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

The military interest in this offense is pervasive. The entire criminal venture was developed by soldiers who had associated in their military unit and both of whom knew that the next most likely recipient of their contraband would be fellow soldiers on post. Under such circumstances, the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense.[3]

In so concluding, we wish to stress that this factual situation is materially different under *Relford* than those in which off-duty servicemen commit a drug offense while blended into the general civilian populace. While it may very well be that a given civilian community takes a "hands-off" approach to marihuana, that circumstance, in and of itself, is an insufficient basis upon which to predicate military jurisdiction. *See Cole v. Laird,* 468 F.2d 829 (5th Cir. 1972). *See also Redmond v. Warner,* 355 F.Supp. 812 (D.Haw.1973); *Schroth v. Warner,* 353 F.Supp. 1032 (D.Haw.1973). To the extent that *United States v. Beeker,* 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969), suggests a different approach in resolving drug offense jurisdictional questions, it no longer should be considered a viable precedent of this Court.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring in the result):

I could safely rest my concurrence here upon my dissent in *United States v. Hedlund,* 2 M.J. 11 (1976). However, the majority's apparent rejection of the treatment accorded an offense by the civilian com-

---

411 (1967). Here, the evidence of record is sufficient to dispose of the question presented, and the Article 32 exhibits do not suggest a contrary result.

**3.** We expressly reject the approach adopted in the separate concurring opinion that, "as a court-martial trial is now conducted, the court members are, arguably, the functional equivalents of the jurors in a civilian criminal trial" and consequently the *O'Callahan* decision may be disregarded whenever a servicemember would not be entitled to indictment by a grand jury in the civilian community. This case provides no occasion for reviewing whether the military jury system as embodied in Article 25, Uniform Code of Military Justice, 10 U.S.C. § 825, offends the Sixth Amendment, whether the Sixth Amendment right to trial by jury applies to the military, and whether constitutionally military juries must reflect a representative cross-section of the military community.

Suffice it to say that court members, hand-picked by the convening authority and of which only four of a required five ordinarily must vote to convict for a valid conviction to result, are a far cry from the jury scheme which the Supreme Court has found constitutionally mandated in criminal trials in both federal and state court systems. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *Compare Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) *and Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), *with Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948). *See also Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Constitutional questions aside, the perceived fairness of the military justice system would be enhanced immeasureably by congressional reexamination of the presently utilized jury selection process.

munity as a factor in determining the triability of the offense by a court-martial impels me to comment further on the matter than I did in my *Hedlund* dissent.

In the years since 1969, many states have revised their law and practice in regard to controlled substances, especially marihuana. Kentucky, which is one of the states "outside" Fort Campbell, now provides that possession of marihuana for personal use is punishable by confinement in the county jail for not more than 90 days and by a fine not in excess of $250.[1] The punishment is such that an accused has no right to trial by jury under the United States Constitution. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Further, the United States Constitution does not require the states to prosecute an offense by indictment of a grand jury. *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). As "preserv[ing] . . . [the] two important constitutional guarantees" of indictment by grand jury and trial by petit jury was the predicate perceived in *O'Callahan v. Parker* for the limitation on the exercise of court-martial jurisdiction,[2] under the maxim *cessante ratione legis, cessat et ipsa lex* [the reason of the law ceasing, the law itself also ceases],[3] the unavailability of those rights in state prosecutions eliminates the cognizability of the offense in the state courts as a bar to trial by court-martial. *United States v. Sharkey,* 19 U.S.C.M.A. 26, 41 C.M.R. 26 (1969). Of course, account must still be taken of the cognizability of the offense in a Federal civilian criminal court.

Federal law on controlled substances has also changed since *O'Callahan.* Under current law, simple unauthorized possession of a controlled substance is punishable by imprisonment for not more than 1 year and a fine of not more than $5,000.[4] An offense of that kind can constitutionally be prosecuted on information.[5] As to a possession offense, therefore, the guarantee-of-indictment justification for the bar to trial by court-martial may not exist. Similarly, as a court-martial trial is now conducted, the court members are, arguably, the functional equivalents of the jurors in a civilian criminal trial, especially since the Supreme Court has held, subsequent to *O'Callahan,* that, in constitutional terms, there is no magic in numbers so that a criminal court jury may consist of less than the customary 12 members;[6] consequently, the jury right prong of the *O'Callahan* limitation may also be inoperative. Resultantly, Federal civilian court cognizability of the kind that would bar a court-martial trial within the *O'Callahan* formula may not be involved in certain violations of the military law on controlled substances, either from the standpoint of unavailability of the constitutional guarantees in the civilian courts, as indicated above, or from the standpoint of the substantial discrepancies in punishment between the civilian penalties and those provided by military law.

In *Relford v. Commandant,* 401 U.S. 355, 367–68, 91 S.Ct. 649, 656, 28 L.Ed.2d 102 (1971), the Supreme Court observed that military significance sufficient to justify the exercise of court-martial jurisdiction may inhere in an offense when there is a "distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for

1. Ky.Rev.Stat. 218A. 990(7).

2. *O'Callahan v. Parker,* 395 U.S. 258, 273, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

3. Black's Law Dictionary 288 (rev. 4th ed. 1968).

4. 21 U.S.C. § 844(a).

5. Fed.R.Crim.P. 7; Wright, Fed.Practice and Procedure, § 131 (1969). But as to youthful offenders, *see* conflict between the District of

Columbia Circuit in *Harvin v. United States,* 144 U.S.App.D.C. 199, 445 F.2d 675 (1971), *cert. denied,* 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971), and the Seventh Circuit in *United States v. Neve,* 492 F.2d 465 (1974), *affm'g,* 357 F.Supp. 1 (W.D.Wis.1973), and *United States v. Dorszynski,* 524 F.2d 190 (7 Cir. 1975).

6. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

all the cases that vindicate the military's disciplinary authority within its own community." Civilian disinclination to prosecute even large-scale public violations of controlled substances laws, such as those occurring at rock concerts and certain athletic contests, or extreme leniency in punishment, has a natural tendency to foster disregard of, and even contempt for, the military prohibitions. The tendency is necessarily strengthened when the prohibited conduct can be safely indulged in civilian sanctuaries just outside the military installation. Although the Supreme Court eschewed a decision on the merits in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), it made several observations that are relevant here. Specifically, it took note of the Solicitor General's statement as to the "nature and magnitude"[7] of the drug abuse problem in the military community, and it remarked that a military court can properly consider whether "the military interest in deterring the offense is distinct from and greater than that of civilian society, and . . . whether the distinct military interest can be vindicated adequately in civilian courts."[8]

---

7. *Schlesinger v. Councilman,* 420 U.S. 738, 760–61 n. 34, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

