**UNITED STATES**

v.

**Airman First Class Larry D. W. LEMONS, FR 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 49th Security Police Squadron USAF Tactical Fighter Weapons Center (ATC).**

**ACM 21661 (f rev).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 March 1974.

Decided 4 Nov. 1976.

* *United States v. Walter*, 20 U.S.C.M.A. 767, 43 C.M.R. 207 (1971).

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, C. J., and EARLY and FORAY, JJ.

DECISION UPON FURTHER REVIEW

FORAY, Judge:

Upon original review of the record of trial in the above entitled case, this Court affirmed the findings of guilty and the sentence. *United States v. Lemons*, 49 C.M.R. 521 (A.F.C.M.R.1974). Subsequent thereto, the United States Court of Military Appeals reversed the decision of this Court, set aside the action of the convening authority, and returned the record of trial to The Judge Advocate General of the Air Force for assignment to a different convening authority and staff judge advocate for a new review and action. *United States v. Lemons,* 23 U.S.C.M.A. 412, 50 C.M.R. 294, 1 M.J. 34 (1975). In the new action, the convening authority approved only so much of the sentence as provided for bad conduct discharge, confinement at hard labor for five years, and forfeiture of $100.00 per month for five years. Upon this Court's further review of this case the approved findings and sentence were affirmed on 13 November 1975. Subsequently, on consideration of the accused's Petition for Grant of Review of our decision upon further review, the Court of Military Appeals ordered that the petition be granted. Additionally, that Court vacated our decision upon further review and remanded the record of trial to this Court with directions to hold further proceedings in abeyance pending that Court's disposition of the issue granted in *United States v. McCarthy*, 2 M.J. 26 and *United States v. Mosely*, 1 M.J. 350.

The issues upon which the Petition for Review was granted are as follows:

1. Whether Specifications 7, 8, 9, 11, 12, 13, 14, 15, were improperly treated as separate for punishment purposes.

2. Whether the court-martial was without jurisdiction to try the offenses alleged in Specifications 4, 5, 6, 7, 8, 9 and 11.

The same issues which were before the Court of Military Appeals in *McCarthy*[1] and *Mosely*[2] were decided by that Court on 24 September and 19 March, 1976, respectively. As a result of those decisions the record of trial in this case is once again before us for further review.

In *McCarthy*, the accused had been convicted by a general court-martial of wrongfully transferring three pounds of marihuana to another soldier "just outside" one of the gates to Fort Campbell, Kentucky, an army installation. On appeal the accused contended the offense was not service connected as the term was explained in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Court of Military Appeals rejected the accused's contention finding that four of the twelve criteria announced in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), by which service connection may be measured, weighed in favor of military jurisdiction over the drug transfer offense. The Court emphasized that a thorough, detailed analysis of the jurisdictional criteria announced in *Relford* is required to resolve service connection issues. The Court went on to say:

Merely because the recipient of the contraband was a soldier is insufficient, in and of itself, to establish service connection . . . The issue requires careful balancing of the *Relford* factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420

---

1. *United States v. McCarthy*, 2 M.J. 26 (1976).

2. *United States v. Mosely*, 24 U.S.C.M.A. 173, 1 M.J. 350 (1976).

U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

In *Mosely*, two of three issues before the Court of Military Appeals dealt with whether the accused in that case could be separately punished for simultaneous multiple drug possession offenses which were alleged as violations of an Army regulation which proscribed each of the drugs as a "controlled substance." The Court held that the offenses were not separately punishable for the reasons set forth in the principal opinion in *United States v. Hughes*, 24 U.S.C.M.A. 169, 51 C.M.R. 388, 1 M.J. 346 (1976). Similarly, in *Hughes*, the question was whether the accused could be separately punished for simultaneous multiple drug possession offenses which drugs were proscribed in the same lawful general regulation as controlled substances. There, the principal opinion stated concerning multiple penalties for violating the same lawful general regulation:

> [W]e believe the appropriate inquiry in resolving the multiplicity question presented must focus on the time proximity between the possession offenses charged. Although this Court in [*United States v. Meyer*, 21 U.S.C.M.A. 310, 45 C.M.R. 84 (1972)] looked to whether the drugs were secreted in the same location or container, no longer do we believe that such an analysis is relevant. The defendant's choice of storage containers or hiding places should not affect the maximum punishment for possession of a cache of drugs. The gravamen of the offense is possessing illicit drugs not concealing them. Similarly irrelevant is a determination of the maximum penalty for multiple possession offenses by resort to the time and place of acquisition . . . Again, the intent of the regulation is to penalize not unlawful purchase but rather unlawful possession. Thus, of controlling significance, is when the accused is charged with and proven to have been in actual possession.

The Court then concluded that the accused's multiple possession of various prohibited drugs at the same time and place not involving multiple victims was a single criminal act and punishable as a single offense.

Appellate defense counsel now claim as error in the case before us those matters contained in the issues previously set forth upon which the Court of Military Appeals granted the accused's petition for review. Additionally, they claim the trial defense counsel made an improper argument prior to sentencing concerning the "general deterrence" theory.

The seven specifications which are the subject matter of the claim of error alleging the court-martial was without jurisdiction to try them, charge that the accused violated a lawful general regulation[3] contrary to the provisions of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Specifically, they allege that on 12 October 1973 the accused possessed, used, and sold amphetamine, and on 17 October 1973 he possessed and used amphetamine and possessed and transferred LSD, all occurring at locations outside the confines of any military installation. Regarding those offenses alleging the sale and transfer of dangerous drugs, the evidence adduced at trial showed the sale and the transfer were made to Air Force enlisted members while off duty and out of uniform and that they and other airmen ultimately used those drugs. The evidence offered at trial also showed the drugs alleged as sold and transferred by the accused were from quantities of those drugs he was charged with possessing.

The Air Force policy regarding drug abuse which was in effect at the times of the commission of the offenses we examine was set forth in Air Force Regulation 30–19, Illegal or Improper Use of Drugs, 11 October 1973, paragraph 2, as follows:

> It is Air Force policy to prevent drug abuse and to identify and treat drug abusers. The illegal or improper use of

---

**3.** Air Force Regulation 30–19, Illegal or Improper Use of Drugs, 11 October 1973, since superseded by Air Force Regulation 30–2, Social Actions program, 1 August 1974.

drugs by Air Force members can seriously damage physical and mental health, may jeopardize their safety and the safety of others and can lead to criminal prosecution and discharge under other than honorable conditions. It is altogether incompatible with Air Force standards.

The incompatibility between drug abuse by Air Force members and Air Force standards has been clearly detailed in numerous other Air Force regulations and manuals. Illustrative of an administrative scheme made necessary within the Air Force because of the conflict between its standards and drug abuse by its members are some of the provisions set forth in the following list of directives:

AFR 30–1, Air Force Standards, 1 August 1971

AFR 30–2, Social Actions Program, 1 August 1974

AFR 33–3, Enlistment in the United States Air Force, 31 March 1975

AFR 35–1, Military Personnel Classification Policy, 25 July 1974

AFR 35–13, Aviation Service, Aeronautical Ratings and Badges, 1 April 1976

AFR 35–67, Line of Duty Determinations and Investigations, 14 August 1964

AFM 35–98, Personnel Reliability Program, 10 June 1971

AFM 35–99, Human Reliability Program, 1 July 1976

AFR 36–2, Administrative Discharge Procedures, 2 August 1976

AFR 36–20, Officer Assignments, 30 June 1976

AFM 39–4, Airman Retraining Program, 30 July 1976

AFR 39–11, Airman Assignment Manual, 1 March 1973

AFM 39–12, Separation for Unsuitability, Unfitness, Misconduct . . ., 1 September 1966

Certain provisions contained in these directives demonstrate the implications drug abuse by Air Force members has on such day to day matters as enlistments and reenlistments, security clearances, duty assignments, duty assignment locations, continued active duty, and other related areas.

The provisions contained in those directives relating to drug abuse have as their ultimate objective the elimination of the adverse impact drug abuse by Air Force members has on the ability of the Air Force to perform its mission. See *United States v. Williams*, 8 U.S.C.M.A. 325, 24 C.M.R. 135 (1957); *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969); *United States v. Castro*, 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969). The mission of the Air Force, like that of its sister services, is to "fight or to be ready to fight wars should the occasion arise." See *Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

We now examine the facts and circumstances surrounding the offenses claimed to be without the jurisdiction of the court-martial to try them.

Specifications 4, 5, and 6 allege the accused possessed, used, and sold amphetamine on 12 October 1973. Evidence admitted at trial showed that some quantity of this drug was sold to an airman and thereafter used by the accused, the buyer, and two other airmen, all of whom were off base, off duty, and not in uniform.

Specifications 7, 8, 9, and 11 allege the accused possessed and used amphetamine and possessed and transferred LSD on 17 October 1973. Evidence admitted at trial showed the possession of these drugs was obtained and portions thereof were used by the accused and another airman while both were off base, off duty, and not in uniform. The remainder of these drugs were transported by the accused to Holloman Air Force Base where portions of them were transferred to and later consumed by other airmen both on and off the installation.

██ Our examination of the foregoing questioned offenses in view of the *Relford* criteria convinces us that factors exist which weigh heavily in favor of military jurisdiction exercised by a court-martial. These factors are:

1. The flouting of military authority.
2. The substantial threat to military personnel and therefore, to the military installation.

The acts committed by the accused had the potential to seriously damage the health, morale, and fitness for duty of himself and other airmen. See *United States v. Williams, supra; United States v. Beeker, supra; United States v. Castro, supra.* The obvious adverse impact that would have on the Air Force mission would make the military interest in deterring those offenses "distinct from and greater than that of civilian society" and that interest could best be vindicated in the military court. *Schlesinger v. Councilman,* 420 U.S. 728, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Hedlund,* 2 M.J. 11 (17 Sept. 1976); *United States v. McCarthy,* 2 M.J. 26 (24 Sept. 1976); *United States v. Campbell,* 2 M.J. 689 (A.F.C.M.R. 19 Oct. 1976).

Accordingly, we find this assignment of error to be without merit.

We now focus our attention on the error claiming that certain of the specifications of the Charge were improperly treated as separate offenses for punishment purposes. The error relates to Specifications 7, 8, and 9 and Specifications 11 through 16.[4]

■ Specifications 7 and 8 allege the accused possessed and used amphetamine and specifications 9 and 11 allege he possessed and transferred LSD, all at El Paso, Texas, on 17 October 1973. Proof offered at trial showed the four offenses to have taken place at substantially the same time of the day in a housetrailer in that city. Specifications 12 and 13 allege the accused possessed and transferred LSD at Holloman Air Force Base, on 20 October 1973, while Specifications 14, 15, and 16 allege he possessed, used, and transferred marihuana at the same time and place. Proof offered at trial showed these offenses took place at substantially the same time of the day and in the same dormitory building, but that one of the offenses took place in a different room than did the other three.

At the trial prior to the court-martial closing to deliberate on the sentence in the case, the military judge instructed the members that not all of the specifications of which the accused had been found guilty were to be considered separate for punishment purposes. As is pertinent to our inquiry, this instruction included the following:

Specifications 7 and 8 are multiplicious for punishment purposes and will be treated as one offense.

He further instructed the Court that Specifications 9 and 11; 12 and 13; and 14, 15, and 16 were to be similarly treated as but three separate offenses for punishment purposes. Obviously, the military judge's determination as to separateness of these offenses for punishment purposes was founded upon the different dates and places the offenses occurred and the different types of drugs involved in the offenses on those dates at those places.

Appellate defense counsel now urge us to find all of the questioned specifications to be but one offense for punishment purposes and that we appropriately reassess the sentence.

We find the facts of the case before us readily distinguishable from the facts in *Hughes* and *Mosely.* Those cases concerned themselves with whether simultaneous multiple drug possession offenses were separately punishable where charged as violations of the same lawful general regulation. Here we are concerned not only with possession of various kinds of dangerous drugs but also with additional acts involving those drugs which acts were separate and distinct from mere possession. These acts were use of amphetamine, transfer of LSD and possession of these drugs on 17 October 1973, and the use and transfer of marihuana, the transfer of LSD and the possession of these drugs on 20 October 1973. Also significantly distinguishing the instant circumstances from the facts of *Hughes* and *Mosely* are that here the offenses took place at two distinctly different locations and culpably involved airmen other than the accused. Further, it is clear from the language of the lawful general regulation alleged to have

---

4. Specification 16 was not included within the issue as granted by the Court of Military Appeals. We believe the omission was inadvertent.

been violated here that it was intended to proscribe the use, possession, sale, transfer, and introduction into a military unit, base, station, post or aircraft of any dangerous drugs listed within that regulation in an attempt to curb drug abuse among Air Force members. Accordingly, we find that the military judge correctly instructed the court-martial regarding the offenses which were to be treated by them as not separate for punishment purposes.

The remaining assignment of error is without merit.

The approved findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and EARLY, Judge, concur.

**UNITED STATES**

v.

**Sergeant James C. ALEF, FR 379–58–2391, United States Air Force Hospital Homestead, Ninth Air Force (TAC).**

**ACM 21879 (f. rev.).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 May 1975.

Decided 24 Nov. 1976.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.