**UNITED STATES**

v.

**Specialist Four George R. WILLIAMS, 266–02–5186, US Army, Medical Company, US Army Medical Department Activity, Fort Belvoir, Virginia.**

**CM 432781.**

U. S. Army Court of Military Review.

Sentence Adjudged 5 Nov. 1974.

Decided 12 Nov. 1976.

Appellate Counsel for the Accused: CPT Lawrence E. Wzorek, JAGC; CPT J. D. Miller, JAGC; CPT Sammy S. Knight, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

DECISION ON FURTHER REVIEW

COOK, Senior Judge:

Our earlier decision in this case, dated 23 July 1975, was vacated by the United States Court of Military Appeals and returned to us on 10 February 1976 with directions to hold the case in abeyance pending a decision in *United States v. McCarthy*, 2 M.J. 26 (24 September 1976).

In *McCarthy*, the Court stated that an *ad hoc* approach, using the 12 *Relford*[1] criteria, be employed in each case to determine if there is sufficient "service connection" to permit alleged offenses to be tried by court-martial.[2] It is now our duty to test the facts in appellant Williams' case under this luminary.

Contrary to his plea, appellant was convicted by general court-martial of three specifications (possession, transfer and sale) involving phencyclidine, charged as violations of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934). The approved sentence is set forth above.

On 24 June 1974, Criminal Investigation Division Agent Troller received information from a Specialist Scipione that appellant had a drug called Soma for sale. Specialist Scipione supplied Troller with appellant's address and directions to appellant's apartment. Scipione then called appellant at his apartment telling him that a Specialist Stevens was coming out with a friend. At approximately 1730 hours, Stevens, accompanied by Troller, arrived at appellant's off-post apartment in Dale City, Virginia. During their forty-five minute stay, appellant sold Agent Troller a tin-foil packet containing what he claimed was a legal drug called Soma. In fact the substance sold was phencyclidine.[3]

---

1. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

2. A requirement imposed by *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

3. The mistake of fact defense was fully litigated at trial and from the evidence of record we believe correctly decided against the appellant.

While testifying on the motion that contested the jurisdiction of the court-martial, Agent Troller stated that he had worked in the Washington, D.C. area for approximately two years as an undercover criminal investigator specializing in the field of narcotics. Working on a rotating basis between five military installations, during March–June 1974 he had worked at Fort Belvoir posing as a construction laborer. In order to gain the confidence of people from whom he would purchase drugs, Agent Troller assumed the appearance of one we normally associate with the drug culture. He had his hair past shoulder length, wore a full beard and mustache, and flavored his speech with drug culture language. His usual dress consisted of blue jeans and a sweat shirt. On the occasion of the instant sale, Agent Troller appeared at appellant's apartment as just described.

Applying the 12 factors listed in *Relford* for resolving the jurisdiction issue,[4] we find no overriding military interest in the prosecution of the specification involving *possession* of phencyclidine.[5] The offense took place off the Fort Belvoir installation while appellant was legitimately away from post. It was not an offense uniquely triable by the military and there was never a threat to a military post or military property. In sum, the Government did not affirmatively establish, as it was its burden to do, that it had an overriding interest in the prosecution of appellant for the off-post possession of this small quantity of phencyclidine.

The specifications involving transfer and sale of phencyclidine present a closer question since these acts involved another service person, Agent Troller. The Government relies on *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974) to support court-martial jurisdiction. In *Sexton* the United States Court of Military Appeals was called upon to answer the certified question of whether "off-base sale of marijuana to a serviceman informer is an offense triable by court-martial." *Sexton, supra*, 23 U.S.C.M.A. at 102, 48 C.M.R. at 663. The Court held that there was sufficient service connection to try an accused by court-martial for the off-post sale of narcotics to a fellow serviceman even though there was no outward indication of the purchasers military status. In sum, the United States Court of Military Appeals found that the status of the victim was very important.[6] But, it is crucial to note that there were many other factors in *Sexton* upon which the Court relied to establish the necessary service connection. Namely, the Court emphasized that the agreement to sell, the transfer of the money, and the outset of the trip to acquire the drugs all occurred on a military post.

Recently, in *United States v. Tucker*, 24 U.S.C.M.A 311, 52 C.M.R. 22, 1 M.J. 463 (1976) the Court stated that " . . . in resolving questions of military jurisdiction, the situs of the offense is far more significant than the status of the accused or the victim." 24 U.S.C.M.A. at 312, 52 C.M.R. at 23, 1 M.J. at 464. Reinforcing this idea in *United States v. Hedlund,* 2 M.J. 11 (17 September 1976), the Court of Military

---

4. We recognize that these factors are not all inclusive, however, we are unaware of any case in which appellant's offense has been excludable under all 12 and still found to be "service connected."

5. We are treating this possession offense separately because the facts reveal that it was not an integrated part of the transaction with Agent Troller. The record reveals that appellant obtained the phencyclidine some two weeks prior to Agent Troller's visit. There is no evidence that the drug was obtained in contemplation of this subsequent sale to Agent Troller. *See United States v. Ortiz-Negron*, 2 M.J. 1038 (A.C.M.R. 12 November 1976); *United States v. Kelly*, 2 M.J. 1029 (A.C.M.R. 1 No-

vember 1976); *United States v. Zorn*, 2 M.J. 1012 (A.C.M.R. 21 October 1976).

6. We draw this conclusion from the Court's singular cite to *United States v. Camacho*, 19 U.S.C.M.A. 11, 41 C.M.R. 11 (1969) a case in which a jurisdictional challenge was denied as to a specification of housebreaking involving (unbeknownst to the accused) the home of a fellow serviceman located in the civilian community, whereas specifications of housebreaking involving the homes of civilians, the Court ruled, had no jurisdictional base.

Appeals acknowledged that "the bulk of this Court's precedent" would lead one to believe that court-martial jurisdiction automatically vested if the victim of the offense was a fellow serviceman, but the Court noted that that is an erroneous interpretation of *Relford, supra.* Under the pen of Judge Perry, the Court stated:

"Under certain unusual circumstances, this factor [military status of the victim] alone might be enough to cause such a high degree of military interest and concern as to compel jurisdiction in the military to try the accused. However, in most instances, including the one now before us, that is not the case." 2 M.J. at 15.

The facts of the case *sub judice* are not those "unusual circumstances" which in and of themselves would bestow court-martial jurisdiction as a result of the military status of Agent Troller. On the contrary, we find that this case falls into the category of cases in which "off-duty servicemen commit a drug offense which blended into the general civilian populace." *McCarthy, supra.* 2 M.J. 29. The criminal intent for the offenses was formulated off post, the transferee/buyer was to all appearances a member of the civilian community, the record of trial does not indicate that there was a reasonable expectation that this small amount of phencyclidine would filter into the military community.

Again, as to the transfer and sale specifications, after the defense had challenged the jurisdiction of the court-martial because of an insufficient service connection, the Government failed to affirmatively establish military jurisdiction.

The findings of guilty and the sentence are set aside and the Charge and its specifications are dismissed.

Judge DRIBBEN and Judge DeFORD concur.