UNITED STATES

v.

Steve A. GOAD, 223 84 9479, Fireman Recruit (E–1), U. S. Navy.

NCM 76 2366.

U. S. Navy Court of Military Review.

Sentence Adjudged 14 July 1976.

Decided 27 Jan. 1977.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

LT Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, Senior Judge, and CRANDELL and GLADIS, JJ.

GLADIS, Judge:

Pursuant to his pleas at a special court-martial bench trial, appellant stands convicted of wrongful possession, sale, and transfer, on 8 October 1975 on board a Naval craft at a Naval base, of flurazepam, a Schedule IV controlled substance, and of wrongful possession, sale, and transfer of marijuana in February or March, 1976 off-base, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The approved sentence includes a bad conduct discharge, confinement at hard labor for 2 months, and forfeiture of $240.00 per month for 2 months.

Appellant assigns the following errors:

I. THE COURT LACKED JURISDICTION TO TRY SPECIFICATIONS 4, 5 AND 6 OF CHARGE I, SINCE THEY OCCURRED OFF-BASE AND NO ON-BASE NEXUS OR OVERRIDING MILITARY INTEREST IN PROSECUTING THE OFFENSES HAS BEEN SHOWN. *UNITED STATES V. McCARTHY* [2 M.J. 26 (1976)].

II. THIS HONORABLE COURT IS REQUESTED TO SUSPEND THE BAD CONDUCT DISCHARGE SINCE THE MILITARY JUDGE IS EMPOWERED UNDER 18 USC § 3651 TO SUSPEND A SENTENCE OR PORTION THEREOF, WHEN IN HIS JUDGEMENT SUCH ACTION APPEARS WARRANTED BY THE EVIDENCE (R. 43). *UNITED STATES V. OCCHI*, 2 M.J. 60 (U.S.C.M.A. *PET. GRANTED* March 12, 1976).

We disagree and affirm.

I

Appellant contends that the court-martial which tried him lacked jurisdiction over the marijuana offenses. He sold 20 grams of marijuana off-base in Norfolk, Virginia to the same petty officer who had purchased 15 flurazepam tablets from him on board a Naval craft at Naval Amphibious Base, Little Creek, Norfolk, Virginia, 4 or 5 months earlier. His possession of marijuana was incident to its transfer and sale. Both appellant and the buyer were assigned to the same unit, Assault Craft Unit Two.

In order to determine whether an offense committed off-base by a service member is service connected within the meaning of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and consequently whether it is triable by court-martial, the jurisdictional criteria enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), must be carefully weighed. *United States v. Moore,* 1 M.J. 448 (1976). The issue turns on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society and on whether the distinct military interest can be adequately vindicated in civilian courts. *Schlesinger v. Councilman,* 420 U.S. 738, at 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Jurisdiction may not be predicated solely on the military status of the wrongdoer and the victim. *United States v. Hedlund,* 2 M.J. 11 (Interim) (1976). Merely because the recipent of the contraband is a service

member is insufficient, in and of itself, in drug cases to establish service connection. *United States v. McCarthy, supra.* Off-base, off-duty use of marijuana by a serviceman, standing alone, does not establish court-martial jurisdiction. *United States v. Williams,* 2 M.J. 81 (1976). An *ad hoc* approach must be taken in each case, balancing the significant jurisdictional criteria. *Relford v. Commandant, supra.*

In *Relford,* the Supreme Court extracted from *O'Callahan,* 12 criteria by which service connection may be measured.

1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

12. The offense's being among those traditionally prosecuted in civilian courts.

The Court in *Relford* stressed among other things the following:

"(a) The essential and obvious interest of the military in the security of persons and of property on the military enclave. . . . (b) The responsibility of the military commander for maintenance of order in his command and his authority to maintain that order. . . . (c) The impact and adverse effect that a crime committed against a person or property on a military base, thus violating the base's very security, has upon morale, discipline, reputation, and integrity of the base itself, upon its personnel and upon the military operation and the military mission. (d) The conviction that Art. I, § 8, cl. 14, vesting in the Congress the power 'To make Rules for the Government and Regulation of the land and naval Forces,' means, in appropriate areas beyond the purely military offense, more than the mere power to arrest a serviceman-offender and turn him over to the civil authorities. The term 'Regulation' itself implies, for those appropriate cases, the power to try and to punish. (e) The distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for all the cases that vindicate the military's disciplinary authority within its own community. . . . (f) The very positive implication in O'Callahan itself, arising from its emphasis on the absence of service-connected elements there, that the presence of factors such as geographical and military relationships have important contrary significance. (g) The recognition in O'Callahan that, historically, a crime against the person of one associated with the post was subject even to the General Article. . . . (h) The misreading and undue restriction of O'Callahan if it were interpreted as confining the court-martial to the purely military offenses that have no counterpart in nonmilitary criminal law. (i) Our inability appropriately and meaningfully to draw any line between a post's strictly military areas and its nonmilitary areas, or between a serviceman-defendant's on-duty and off-duty activities and hours on the post."

In *United States v. McCarthy, supra,* the Court of Military Appeals had occasion to

consider whether off-base transfer of three pounds of marijuana to a fellow serviceman was service connected. Weighing the *Relford* criteria, the Court found that the following four factors were sufficient to vest a court-martial with jurisdiction.

1. The formation of the criminal intent for the offense on-post.

2. The substantial connection between the defendant's military duties and the crime.

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

We find that the military interest in deterring appellant's marijuana offenses was distinct from and greater than that of civilian society and could not be adequately vindicated in the civilian courts.

Appellant initially sold a controlled substance on a Naval craft at a Naval base to Petty Officer C who subsequently purchased 20 grams of marijuana from him off-base. Both men were assigned to the same unit. There was a substantial connection between appellant's military duties and his drug trafficking with C. The drug trafficking relationship established by appellant on board a Naval craft with a fellow member of his military unit extended off base. The amount of marijuana involved was neither vast nor insubstantial.[1]

■ The pervasive military interest recognized in *United States v. McCarthy, supra,* may be engendered by the potential for both harm to servicemen individually and for the disruption of essential military relationships which exists when traffic in contraband is conducted in and around a military unit. *United States v. Zorn,* 2 M.J. 1012 (A.C.M.R.1976). The very nature of military community life places military persons in close and continuing association and contact with each other. This relationship does not cease at the gates of the base, but often extends off-base. *United States v. Butler,* 41 C.M.R. 620, at 624 (A.C.M.R.1969). Off-base criminal conduct of servicemen involving fellow servicemen as coactors or victims may be service connected and subject to court-martial jurisdiction because of the significance of the military relationships and the threat to the peace, security, discipline, and morale of the unit, base, and military community. *See United States v. Butts,* 1 M.J. 1073 (N.C.M.R.1976); *United States v. White,* 1 M.J. 1048 (N.C.M.R.1976). Drug trafficking among members of a military unit poses a serious threat to the security and discipline of the unit even though the actual transaction occurs off-base. *Cf. United States v. Roulo,* 1 M.J. 1071 (N.C.M.R.1976).

■ The following *Relford* factors militate in favor of court-martial jurisdiction:

1. Appellant's drug dealing relationship with the buyer was established on board a Naval craft on base during duty hours.

2. There was a substantial connection between appellant's military duties and drug trafficking with the buyer.

3. Appellant's off-base marijuana sale to a fellow member of his military unit who had previously purchased a controlled substance from him on board a Naval craft, posed a threat to the security and discipline of the unit to which both were assigned.

4. Appellant's off-base marijuana sale flouted military authority.

There is clearly a pervasive military interest in deterring trafficking between members of a military unit when such trafficking is a continuation of similar activity conducted on base. The military interest in deterring appellant's marijuana offenses was distinct from and substantially greater

---

1. About 40 marijuana cigarettes can be made from approximately 22 grams of marijuana. Lingeman, *Drugs From A to Z,* p. 130.

than that of civilian society and could not be adequately vindicated in the civilian courts. The offenses were service connected and triable by court-martial. The first assignment of error lacks merit.

## II

■ Prior reviewing authorities have not followed the military judge's recommendation that appellant's bad conduct discharge be suspended. The decision of the Court of Military Appeals in *United States v. Occhi,* 2 M.J. 60 (1976), is dispositive of the second assignment of error.

An unsuspended bad conduct discharge is entirely appropriate in this case on the basis of the offenses of which appellant stands convicted and his record, which includes a prior special court-martial conviction and two previous nonjudicial punishments.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge NEWTON and Judge CRANDELL concur.