UNITED STATES, Appellee,

v.

**Private First Class (E–3) John L. BLACKMORE, SSN 311–58–9478, United States Army, Appellant.**

**CM 434666.**

U. S. Army Court of Military Review.

14 July 1977.

---

Lieutenant Colonel John R. Thornock, JAGC, and Captain Peter V. Train, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, Captain Lee D. Schinasi, JAGC, and Captain Michael J. Hurley, JAGC, were on the pleadings for appellee.

Before JONES, FULTON and FELDER, JJ.

## OPINION OF THE COURT

FULTON, Judge:

The appellant was charged with possessing and transferring heroin on 29 September 1975, possessing and transferring heroin on 30 September 1975, and possessing and attempting to transfer heroin on 3 October 1975. Pleading guilty, he was sentenced to a dishonorable discharge, confinement for 15 years, and forfeiture of $250.00 per month for 15 years. Pursuant to a pretrial agreement, the convening authority reduced both the term of confinement and the period of forfeitures to three years, but approved the sentence otherwise.

■ Because the offenses were charged as violations of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, rather than as violations of Article 92, UCMJ, 10 U.S.C. § 892, with its lesser maximum punishment, appellate review has been abated pending clarification of the applicability of *United States v. Courtney,* 1 M.J. 438 (1976) (absent governing standards, charging under article affording more severe punishment denies equal protection of the laws). It now has been held that *Courtney* is prospective only. Because the appellant was tried before 3 July 1976, applying the more severe punishment authorized under Article 134, *supra,* was not error. *United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977); *accord, United States v. Graves,* 3 M.J. 186 (C.M.A. No. 31,110, 19 May 1977).

Accordingly, we may now resolve the remaining issues in this case; the principal one being jurisdiction over drug offenses occurring outside a military installation. *See United States v. McCarthy,* 25 U.S.C. M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

Charges of simultaneously possessing and transferring or attempting to transfer the same drug are multiplicious for sentencing and properly were recognized as multiplicious by the parties and the military judge. *See United States v. Waller*, 3 M.J. 32 (C.M.A. 1977); *United States v. Smith*, 1 M.J. 260 (1976). For the purpose of this decision, therefore, we concern ourselves solely with the actual or attempted transfers of the drug in question (heroin). The appellant and others involved were stationed at Fort Bragg, North Carolina. The transfers of heroin occurred in the nearby city of Fayetteville. They occurred under circumstances in which it reasonably may be inferred that the appellant knew that the drug would be introduced into Fort Bragg. Fortunately, but unbeknownst to him, the eventual destination was the evidence locker of the resident criminal investigation detachment.

On 29 September 1975, at Fort Bragg and during or shortly after a morning formation, Specialist Five Hanes approached the appellant and requested a quantity of heroin for resale. The appellant agreed and they left the installation and went to Fayetteville where the appellant first obtained the drug (possibly from his off-post quarters), then met and delivered it to Hanes at the "CBX Station on Raleigh Road." Later the same day, on the post at Fort Bragg, Hanes sold the drug (.309 gram of heroin) to Specialist Four Wilson for $100.00. Neither the appellant nor Hanes knew that Wilson was working for Army criminal investigators.

The following day, 30 September 1975, after duty hours, Hanes telephoned the appellant at the latter's off-post residence and requested more heroin for resale to Wilson. The appellant took two packets of heroin (.695 gram) to Hanes' off-post residence in Fayetteville. Hanes resold the two packets to Wilson for $200.00 at another location in Fayetteville. The next day, as in the case of the first transaction, Hanes delivered the proceeds to the appellant.

Hanes was apprehended three days later, as a consequence of his sales to Wilson, and agreed to cooperate with the criminal investigators. From the CID office, he telephoned the appellant at home and arranged a meeting in Fayetteville that evening at which he was to receive more heroin. They met at Hanes' off-post residence, then went to another location to effect the transfer. By design, they were interrupted by criminal investigators before the transfer. Four packets (1.396 grams) of heroin were in appellant's possession.

At the trial, the appellant unsuccessfully challenged military jurisdiction over all of the charges and specifications on the basis that there was no service connection. Appellate counsel for the defense seemingly concede that the events of 29 September were subject to court-martial jurisdiction, and argue only that the offenses of 30 September and 3 October were insufficiently service-connected. The Government counters that they were service-connected and also argues that related nonservice-connected offenses may be tried in the same forum as service-connected offenses. *United States v. Cruz*, 54 C.M.R. 744, 747, 2 M.J. 731, 733 (A.F.C.M.R.1976); *United States v. Rock*, 49 C.M.R. 235, 238 (A.F.C.M.R.1974), *pet. denied* 23 U.S.C.A. M.A. 632 (1974).

Speaking of the 12 service-connection criteria listed in *Relford v. Commandant*, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and quoting from *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Court of Military Appeals has cautioned that the issue of jurisdiction—

> requires careful balancing of the *Relford* factors to determine "whether military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." [1]

1. "Adequate" vindication in some circumstances would seem to entail elimination from the service with a dishonorable or bad-conduct discharge from the armed forces. That is something that civil courts have no power to adjudge. It can be accomplished only as a result

*United States v. McCarthy, supra,* 25 U.S.C. M.A. at 33, 54 C.M.R. at 33, 2 M.J. at 28.

The *McCarthy* court was dealing with a transaction quite similar to the one in which the appellant was involved on 29 September, except that a larger distributable quantity of the drug was there involved (3 pounds of marihuana) and the sale was closer to the installation ("just outside" a gate). The parties had met and their criminal intent was formed on-post. Their meeting and agreement was facilitated by their mutual military duty status. The transfer of a substantial quantity of contraband to a known dealer posed a threat to military personnel. Under these circumstances, the Court concluded that:

> The military interest in this offense is pervasive. The entire criminal venture was developed by soldiers who had associated in their military unit and both of whom knew that the next most likely recipient of their contraband would be fellow soldiers on post. Under such circumstances, the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense.

2 M.J. at 29.

■ The same *Relford* factors apply and govern here. The criminal intent for the offense was formed on-post. The respective military duty assignments of the appellant and Hanes (members of the same bat-

talion) facilitated their acquaintance and their meeting. In addition, the facts established on the record permit a fair inference that the eventual purchaser (Wilson) was known by each to be a military person. Accordingly, the same threat to military personnel present in *McCarthy* is present here.[2]

■ The record does not disclose any separate on-post activity related to the transactions of 30 September and 3 October. Without intending to say that whenever two servicemembers have engaged in one service-connected drug transaction, all subsequent transactions between them are service-connected, we nevertheless regard the transactions of 30 September and 3 October as subject to military jurisdiction. The proximity in time and identity of purpose indicate that they flowed from the original contact between the appellant and Hanes. They were equally dependent upon the on-post agreement, equally enabled by the mutual military duty relationship of the participants, and posed an equal threat to military personnel; in short, they were governed by the same *Relford* factors applicable to the initial transaction.[3]

■ As to the remaining assignment of error, the appellant was not prejudiced by the failure to receive a copy of the record of trial before the convening authority acted. It is apparent that his copy of the record was retained at the trial situs so that it

---

of conviction by a military court. Members who have been convicted by civil courts may be awarded administrative discharges under conditions less than honorable. Also, drug offenders may be administratively discharged without trial in any court. In either case, however, the discharge is not a punitive one.

2. The quantity of the drug was distinctly smaller, being measured in ounces rather than pounds, but it was of a different type. The special threat posed by heroin, however, has been aptly noted in *Peterson v. Goodwin,* 512 F.2d 479, 480 (5th Cir. 1975), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976). Also, although the transfer from appellant to Hanes was farther removed from the post than "just outside", that is insignificant so long as the civilian community was in no way involved and the later resale to Wilson occurred on the post.

3. We reached a similar result in an unpublished opinion in a case now pending before the Court of Military Appeals, *United States v. Erb,* A.C. M.R., CM 435178, 21 January 1977, *pet. granted,* 3 M.J. 113, (1977). We prefer to base our decision on this reasoning rather than on the alternative that related nonservice-connected offenses can be tried with service-connected offenses. With the exception of *United States v. Rock, supra,* the only authorities cited to us have involved jurisdiction in civil actions. The Supreme Court's restriction of military criminal jurisdiction, on the other hand, has constitutional underpinnings. *See United States v. McCarthy, supra,* 25 U.S.C.M.A. at 36–37, 54 C.M.R. at 36–37, 2 M.J. at 29–30 (Cook, J., concurring in result).

would be available to his military and civilian defense counsel in connection with their evaluation of the staff judge advocate's review.

The findings of guilty and sentence are affirmed.

Senior Judge JONES concurring.

FELDER, Judge, concurring:

The opinion of the majority deals primarily with the jurisdictional basis for the military to court-martial the appellant for the drug transaction that occurred on 29 September 1975. On that date, the appellant entered into an agreement at Fort Bragg, North Carolina, to transfer .309 grams of heroin to Specialist Five Hanes, who sold it to Specialist Four Wilson, an undercover agent. Although the possession of the heroin by the appellant and his transfer of it to Specialist Hanes occurred in Fayetteville, North Carolina, Specialist Hanes brought the drugs on post where a sale was consummated with Specialist Wilson. The proceeds from the sale were eventually given by Specialist Hanes to the appellant. Because the offenses of possession and transfer of heroin originated at Fort Bragg, military interest in them is pervasive under *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), and jurisdiction over them is tacitly conceded on appeal by the defense.

The crucial question before this Court then is whether the military has jurisdiction over the drug offenses that occurred on 30 September 1975 and 3 October 1975. This issue requires considerable discussion and analysis.

On 30 September 1975, after duty hours, Specialist Hanes, while at his Fayetteville residence telephoned the appellant at his civilian quarters. He requested the appellant to furnish him another quantity of heroin so he could sell it to Specialist Wilson. The appellant delivered .695 grams of heroin to Specialist Hanes' residence. Later that day Specialist Hanes met Specialist Wilson in a parking lot in Fayetteville, where the heroin was sold to him for two

hundred dollars. The next day Specialist Hanes gave the proceeds to the appellant.

On 3 October 1975 after Specialist Hanes was apprehended, he agreed with the CID to participate in a staged transfer of heroin from the appellant. Specialist Hanes, while at the CID office, called the appellant at his civilian residence and made arrangements to obtain heroin from him. They met in a pawn shop parking lot in Fayetteville, where the appellant was apprehended by the CID with 1.396 grams of heroin in his possession. The appellant's total involvement resulted in his conviction of three charges of possession of heroin, two charges of transferring heroin to Specialist Hanes and one charge of attempting to transfer heroin to Specialist Hanes.

Central to the resolution of the jurisdictional question regarding the drug transactions of 30 September and 3 October, is the decision whether to separately or conjunctively treat them with the drug transaction of 29 September. The offenses of 30 September and 3 October would not be service connected if analyzed only in isolation pursuant to the twelve factors and nine considerations in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). As the majority states, these transactions were not related to "any on-post activity." We know from *Relford* at 368, 91 S.Ct. 649, that a crime against an individual upon the base or against property on the base is service connected; and that a crime not committed at or near a military post, or in breach of military duty or orders is generally to be regarded as a civil offense. It is clear then that the situs of the offense is the most significant single factor in determining jurisdiction. *See United States v. Tucker*, 1 M.J. 463 (1976).

Not every offense that has its genesis on a military installation and executed in the civilian community is service connected. In *United States v. Hedlund*, 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976), it was held that court-martial jurisdiction existed over a conspiracy offense that was formulated on a Marine Corps base but it did not exist

over the robbery and kidnapping offenses, the objects of the conspiracy, because the offenses were perpetrated off the base. This decision was reached even though one of the victims was a fellow marine. However, in *United States v. McCarthy, supra*, where the arrangement between soldiers to transfer marihuana occurred on an Army post, and the actual physical transfer occurred in the civilian community, and the marihuana was brought on post for distribution to fellow soldiers, jurisdiction over the transfer was upheld. Based upon the recited facts, the obvious distinction between the two cases is that in *McCarthy* the offense, even after its commission, posed a continued threat to military personnel and the military community itself; whereas, the offenses in *Hedlund* terminated in the civilian community upon its commission and did not impact upon the military sphere.

The facts in this case vividly demonstrate that the appellant was in the business of supplying heroin to Specialist Hanes, whose business it was to sell the substance to Specialist Wilson on behalf of the appellant. Although the possession, transfer and attempted transfer occurred in Fayetteville, the appellant knew or should have known from the events of 29 September that the drugs would be introduced into Fort Bragg either by Specialist Hanes, the seller, or Specialist Wilson, the purchaser. Once having been placed on notice that he was supplying heroin to a drug dealer; and that the ultimate recipient of the contraband was a fellow soldier; and that the substance would be introduced into a military installation, all subsequent transfers to the drug dealer threatened the military community. Because the drug offenses of 30 September and 3 October are direct outgrowths of the drug offenses of 29 September, which originated at Fort Bragg, the offenses should be considered jointly for jurisdictional purposes.

Jurisdiction in this case is predicated upon the following *Relford* factors and considerations:

(1) The military status of all the parties involved;

(2) The criminal intent for the offenses was formulated on post;

(3) The introduction of heroin into the reservation threatened the military community;

(4) The interest of the military in the welfare of persons and security of property on the military enclave;

(5) The impact and adverse effect of a crime committed against the property on a military base, thus violating the reputation and integrity of the post itself;

(6) The responsibility and authority of the military commanders to maintain order and discipline in his command;

(7) The violation of military law and regulations; and

(8) The nonintervention of civilian authorities in the prosecution of this case.

For these reasons, I join the majority in affirming the findings of guilty and the sentence.