UNITED STATES

v.

**Airman First Class George M. COKER, FR 424–78–3102 351st Missile Maintenance Squadron Eighth Air Force (SAC).**

ACM 22019.

U. S. Air Force Court of Military Review.

Sentence Adjudged 1 Dec. 1975.

Decided 29 Oct. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner, Colonel Robert W. Norris and Captain Gary C. Smallridge. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial composed of a military judge sitting alone, the accused stands convicted, after mixed pleas, of one specification each of using marihuana, possessing marihuana, possessing lysergic acid diethylamide (LSD), and selling phencyclidine (PCD), all in violation of paragraph 4–46, Air Force Regulation 30–2, 1 August 1974 and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The approved sentence provides for a bad conduct discharge, confinement at hard labor for 18 months, forfeiture of $240.00 per month for 12 months, and reduction to the grade of airman basic.

Though appellate defense counsel have briefed and orally argued several asserted errors, only three warrant discussion in this decision. The first we consider is counsel's contention that all charges should be dismissed for lack of service connection. Having carefully considered this contention in light of the United States Court of Military Appeals' recent case in *United States v. McCarthy*, 2 M.J. 26 (24 September 1976), we disagree.

In this case, the locus of all offenses was the accused's residence, a trailer, which was located over two miles from the Air Force installation to which he was assigned. The sale of PCD was made to a fellow serviceman who was acting under the aegis of agents of the Air Force Office of Special Investigations (OSI), one of whom accompanied the airman to the accused's trailer and participated with him in the sale.

In *United States v. McCarthy*, supra, the Court of Military Appeals decided that the offense involved, the wrongful transfer of three pounds of marihuana to a fellow serviceman "just outside" the gate of the army installation, was service connected within the meaning of *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Court iterated its view that resolution of such issues involves a careful balancing of the 12 criteria for measuring service connection outlined in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), "to determine 'whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts.' *Schlesinger v. Councilman*, 430 [420] U.S. 738, 760 [95 S.Ct. 1300, 43 L.Ed.2d 591] (1975);" *United States v. Hedlund*, 2 M.J. 11 (17 September 1976); *United States v. Moore*, 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976); *United States v. Tucker*, 24 U.S.C.M.A. 311, 52 C.M.R. 22, 1 M.J. 463 (1976). To emphasize its judgment that a detailed, thorough analysis is required, and that a more simplistic test is not sanctioned by the United States Supreme Court, the Court observed that the mere fact a contraband recipient is a serviceman is insufficient, standing alone, to establish service connection. And for the same purpose, the Court further stressed that the mere fact a particular civilian community takes no prosecutorial interest in marihuana, is an insufficient circumstance, again standing alone, upon which to predicate service connection.

In the *McCarthy* case, the Court upheld the exercise of military jurisdiction on the

basis of a demonstrable conclusion that the "entire criminal venture was developed by soldiers who had associated in the military unit and both of whom knew that the next most likely recipient of the contraband would be fellow soldiers on post." Such circumstances convinced the Court that the military interest in the offense was pervasive in the sense that "the military community certainly had the overriding, if not exclusive, interest in prosecuting the offense." Careful examination of the offenses in this case in light of the *Relford* criteria convinces us that the military interest as to each offense is as pervasive as found by the Court in *McCarthy*.

The record reveals that at the time of the offenses, the accused was assigned as a member of a missile maintenance team responsible for performing important and highly sensitive duties in a 150 missile complex spanning an area of 16,000 square miles. According to his duty description, the team on which the accused was a member (designated as a quick react maintenance team) was charged with the support of the Strategic Air Command's Emergency War Order. In light of his designated military duties, it is not hyperbole to suggest that the accused occupied a position of extreme importance to the mission goals of his organization and the Air Force. It stands to reason that members of the accused's team were and are required to be alert and available for duty on extremely short notice, day or night. They presumably must be prepared to immediately respond to and promptly effect necessary repair of highly complex offensive missile apparatuses, thus insuring the constant readiness and vigilance of that portion of the strategic military forces of the United States.

■ In such circumstances, the military inherently has a far greater stake in determining drug abuse among its missile men, and other servicemen performing duties of equal importance to the defense of our nation, than does the local civilian community where the military organization happens to be located. In terms of the *Relford* criteria, we are satisfied there is at least one factor that demonstrates the military community had the primary, if not singular, interest in prosecuting the marihuana use offense here involved: the obvious threat to a military post; more specifically, the direct threat posed by the prohibited drugs to the critical mission of the organization to which the accused was assigned. Manifestly, the military interest in deterring drug offenses, particularly the marihuana use offense and to a similar extent the marihuana and LSD possession offenses, is in this context "distinct from and [far] greater than that of [the] civilian community." *Schlesinger v. Councilman,* supra. The unique military concern here encountered could hardly be adequately vindicated in the civilian courts. *Id.*

■ When applied to the marihuana use offense, the words of Mr. Justice Powell in *Schlesinger v. Councilman,* supra, 420 U.S. at 760, footnote 34, 95 S.Ct. at 1314, are especially pertinent:

It is not surprising, in view of the nature and magnitude of [the military drug abuse] problem, that in *United States v. Beeker,* 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969), the Court of Military Appeals found that the "use of marihuana and narcotics by military person[nel] on or off a military base has special military significance" in light of the "disastrous effects" of these substances " 'on the health, morale and fitness for duty of persons in the armed forces.' "

We readily conclude that the accused's off-base use of marihuana is a service-connected crime within the meaning of *O'Callahan v. Parker* and *Relford v. Commandant,* both supra.

■ With reference to the marihuana and LSD possession offenses, as stated by Chief Judge LeTarte in our recent decision of *United States v. Smith* (f. rev.), 2 M.J. 1235 (A.F.C.M.R. 22 October 1976), "admittedly, examination of the *Relford* criteria does not so readily reveal factors supporting the exercise of military jurisdiction over . . . possession offenses." Of course, we could speculate that the accused's pos-

session of the proscribed drugs was not an end in itself, but reasonably contemplated one of about three alternatives: the use, transfer or sale of the drugs. However, we choose not to rely on such speculation to sustain the exercise of jurisdiction as to those offenses. Instead, we do so on the basis of past decisions of the Court of Military Appeals as summed up in the words of Chief Judge LeTarte in the referenced *Smith* decision:

> [I]n our opinion, such misconduct, whether committed on or off-base, is of such singular military significance as to inherently satisfy the *Relford* criteria for measuring service-connected crimes. *United States v. DeRonde,* 18 U.S.C.M.A. 575, 40 C.M.R. 287 (1969); *United States v. Beeker,* [supra].

See *United States v. Castro,* 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969).

> Certainly the offense [off-base possession of hashish] involves a flouting of military authority since such drug abuse, like homosexuality, is incompatible with Air Force standards and may provide, in and of itself, the basis for the offender's involuntary discharge from the military service. For this reason, we believe there existed an "overriding" military interest in prosecuting the offense. (Footnote omitted.)

*United States v. Smith, supra.*
We accordingly conclude that the accused's off-base possession of marihuana and LSD are service-connected offenses within the principles enunciated by the United States Supreme Court and the United States Court of Military Appeals.

■ Finally, as to the accused's sale of the dangerous drug designated as PCD, we find service connection for the reasons recently stated by this Court in *United States v. Artis,* 2 M.J. 692 (A.F.C.M.R. 22 October 1976), a case concerned with off-base sales of marihuana. Here, as in that case, upon examination of the *Relford* criteria, we conclude there are two factors demonstrating a pervasive military interest in the sale offense: the flouting of military authority and the threat posed to the mili-

tary community. *United States v. McCarthy, supra.* As we observed in *Artis,* though our conclusion facially appears at odds with the position of the Court of Military Appeals in *McCarthy* and *United States v. Hedlund, supra,* past decisions of the Court have upheld the exercise of military jurisdiction under substantially similar circumstances, and have received approving recognition by the Supreme Court. See, e. g., *United States v. Rose,* 19 U.S.C.M.A. 3, 41 C.M.R. 3 (1969); *United States v. Sexton,* 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974); *Schlesinger v. Councilman, supra.*

■ In our opinion, the sale offense, as the others, has singular military significance as to inherently satisfy the *Relford* service connection criteria. *United States v. Sexton; United States v. Rose; United States v. Beeker,* all *supra.* Moreover, this case involves the sale of proscribed drugs to another serviceman, who, though employed in an undercover capacity by the OSI, was assigned to the communications organization (inferentially, at the accused's base). The military community, on much the same basis as with the accused's use of marihuana, had the "overriding, if not exclusive, interest in prosecuting the offense." *United States v. McCarthy, supra.*

■ Though we have found specific service connection on the basis of *Relford* criteria as to all offenses, the fact that there is a patently demonstrable service connection as to the marihuana use offense is of itself a circumstance arguably supportive of the exercise of military jurisdiction as to the possession and sale offenses. As we reasoned in *United States v. Rock,* 49 C.M.R. 235, 238 (A.F.C.M.R.1974), an "implication" of the three expressed opinions in *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), and the " 'forum appropriateness' holding of the plurality, is that if a serviceman is properly before a court-martial on charges alleging a clearly service-connected offense, he might also be tried for a nonservice-connected offense." It stands to reason that if this implication is valid, it should be accorded particular rele-

**308**

vance in a case such as this, where the accused was tried for closely related drug offenses.

 In another area, appellate defense counsel say the accused was prejudiced, both as to findings and sentence, because the prosecution infused the proceedings with inadmissible evidence of uncharged misconduct. We need not engage in a piecemeal analysis for admissibility of the several instances of misconduct to which we are referred by counsel, for we are satisfied that in this trial by military judge alone the accused suffered no harm. Absent a contrary indication, a military judge when trying a case alone, unlike members of a court-martial, is presumed to have arrived at his findings and sentenced an accused on the basis solely of matters properly relevant to the offenses charged. *United States v. Weaver*, 42 C.M.R. 434 (A.C.M.R.1970), rev'd on other grounds, 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970); *United States v. Razor*, 41 C.M.R. 708 (A.C.M.R.1970), and Federal cases cited therein; see *United States v. Montgomery*, 20 U.S.C.M.A. 355, 42 C.M.R. 227, 231 (1970).

In the final assertion of error we address, appellate defense counsel contend the evidence is insufficient to sustain the accused's conviction of selling the drug earlier referenced as PCD. In support of this claim, counsel point to the record indication the accused was ignorant of the fact that the drug conveyed was PCD. According to the record, the accused believed the drug to be dimethyltryptamine, known by the initials DMT. Nevertheless, the accused conceded he knew it was unlawful to possess DMT.

 The accused's belief that he possessed and sold an illegal drug other than the one charged is not exonerating. *United States v. Anderson*, 46 C.M.R. 1073 (A.F.C.M.R.1973). To constitute a defense, an accused's mistaken belief must be such that his conduct would have been lawful had the facts been as he reasonably believed them to be. *United States v. Rowan*, 4 U.S.C.M.A. 430, 16 C.M.R. 4 (1954); *United States v. Anderson, supra*; 21 Am.Jur.2d, § 93.

All remaining assigned errors are either without merit or were discussed by the staff judge advocate in his review and properly resolved adversely to the accused.

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.