UNITED STATES

v.

Airman Basic Leonard R. MURPHY, FR 164–46–9667, Headquarters, 1st Composite Support Group, Headquarters Command USAF.

ACM 21960 (f. rev.).

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 Sept. 1975.

Decided 10 Nov. 1976.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

LeTARTE, Chief Judge:

In our original, unpublished decision in this case, dated 3 March 1976, we affirmed the findings of guilty and the sentence after reducing the sentence to bad conduct discharge, forfeiture of $240.00 per month for 12 months and confinement at hard labor for 12 months. Thereafter, the United States Court of Military Appeals vacated our decision and remanded the record of trial to us with instructions to hold further proceedings in abeyance pending the Court's disposition of the issue granted in *United States v. McCarthy*, 2 M.J. 26 (24 September 1976).

In *McCarthy*, the Court found that the offense of "wrongfully transferring 3 pounds of marihuana to a fellow soldier 'just outside' gate 3 of Fort Campbell, Kentucky," was "service connected as that term was explained in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)." In arriving at this finding, the Court considered the criteria set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), for measuring service connection, and concluded that the military interest in the offense was "pervasive." Significantly, however, the Court iterated that in each case involving service connection issues, the *Relford* factors must be carefully balanced to determine "whether the military interest in de-

terring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *United States v. McCarthy, supra,* quoting *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

The accused was convicted of two specifications each of wrongful possession and sale of lysergic acid diethylamide (LSD) and single specifications of wrongfully possessing marihuana and transferring heroin. The pertinent facts reveal that on 17 June 1975, the accused sold "two small squares" of LSD to Special Agent Roscoe, an undercover agent assigned to the Office of Special Investigations (OSI). The sale occurred not far from Andrews Air Force Base, Maryland.

On 28 June, the accused and Agent Roscoe met on base where the accused agreed to obtain LSD for Roscoe. Later, while at Agent Roscoe's off base residence, the accused sold Roscoe 200 "dosage units" of LSD for $230.00.

On 30 June, the accused and Agent Roscoe entered the accused's barracks where Roscoe was introduced to an Airman Curtis who agreed to obtain heroin for Roscoe. Subsequently, at Roscoe's off base residence, the accused transferred two packets of heroin to Roscoe for which Roscoe paid Curtis $250.00.

■ Having considered these facts in light of the *Relford* criteria, we are satisfied that the military properly exercised its jurisdiction over the offenses. We have previously expressed our opinion that drug abuse offenses, whether committed on or off base, are of such singular military significance as to inherently satisfy the *Relford* criteria for determining service connected crimes. *United States v. Smith,* 2 M.J. 1235 (A.F.C.M.R. 22 October 1976); *United States v. Smith* (A.F.C.M.R. 21 July 1976). This is especially apparent when, as here, the crimes involve an accused's

illegal disposition of extremely deleterious drugs, a hallucinogen and habit forming narcotic.

Moreover, despite the fact that the accused apparently believed the "victim" was a civilian, the service connection aspect of the wrongful sale of LSD and transfer of heroin is evident since in each instance the crime was conceived, and agreed upon, within the limits of the military installation. See *United States v. McCarthy, supra*; Cf. *United States v. Crapo,* 18 U.S.C. M.A. 594, 40 C.M.R. 306 (1969) (off base robbery found service connected where certain elements of the offense took place within the confines of a military base). Only the physical exchange of the drugs and the purchase price took place off base. See *United States v. Sexton,* 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974).

■ With respect to the possession of LSD offenses, we are equally convinced that a service connection exists. Initially, we note that these offenses were so closely related to the LSD sales that the military judge ruled they were multiplicious for sentencing purposes. See *United States v. Rock,* 49 C.M.R. 235 (A.F.C.M.R.1974), pet. denied (23 December 1974), citing *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).[1] Furthermore, relative to these and the marihuana possession offenses, the Court of Military Appeals has consistently held that such crimes are service connected. *United States v. Beeker,* 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969) (off base possession and use of marihuana); *United States v. Castro,* 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969) (off base possession and use of barbiturates and amphetamines); *Rainville v. Lee,* 22 U.S.C. M.A. 464, 47 C.M.R. 554 (1973) (off base possession, use and sale to a service member of marihuana).

We are cognizant that the rationale expressed in the Court's decisions prior to

---

1. In our original decision in this case, we indicated, citing *United States v. Rock, supra,* at 238, that if a serviceman is properly before a court-martial on charges that are clearly service connected, he might also be tried at the same time *for closely related* offenses wherein service connection is not so apparent.

*Rainville v. Lee, supra*, must be viewed with caution since they predated the *Relford* decision. See *United States v. Moore*, 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976). Nevertheless, it is significant that in *Rainville*, the Court not only found that the military had properly exercised its jurisdiction over the offenses but also cited its prior decisions in support of its conclusion.

■ We believe that the result reached in *Rainville* is entirely consistent with the Supreme Court's opinions in *O'Callahan v. Parker* and *Relford v. Commandant*.[2] Off base possession of drugs *is* potentially detrimental to the health, morale and fitness for duty of servicemen and thus relates to a matter that is clearly service connected. *Rainville v. Lee, supra*, and cases cited therein. Further, such conduct constitutes a flagrant flouting of military authority since it may provide the basis of the offender's involuntary discharge from the military service.[3] Consequently, it cannot reasonably be argued that the military interest in prosecuting such offense is inferior to that of the civilian community. See *United States v. McCarthy, supra*.

The decisions in *O'Callahan* and its progeny were intended to provide servicemen with certain constitutional guarantees for those offenses that are unrelated to the offender's, or his victim's military duties, do not otherwise pose a threat to military personnel, military property or the military community and are traditionally prosecuted in civilian courts. Admittedly, the simplest method of distinguishing between offenses that are or are not service connected would be to decide the issue on the sole basis of the crime's principal situs, that is, only those crimes committed at a place under military control would be considered service connected. However, the courts have recognized that certain offenses, though committed in a civilian community, are of such distinct military interest that the service's prerogative to prosecute the offender outweighs the assumed deprivation of constitutional safeguards.[4]

Without citing fiscal authority for our opinion, we believe it is not unreasonable to state that a significant part of the military budget is presently directed toward the investigation of those military personnel who are trafficking in drugs. Prosecution of these individuals in military courts is essential simply because of the military's unique function. In sum, if the military drug problem is to be eliminated, prompt and efficient disposition of those military personnel who traffic in drugs, whether on or off base, must be pursued. This can only be accomplished with any shred of uniformity, by military investigators and in military courts.

> It is not surprising, in view of the nature and magnitude of the problem, that in *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969), the Court of Military Appeals found that "use of marihuana and narcotics by military persons on or off a military base has special military significance" in light of the "disastrous effects" of these substances " 'on the health, morale and fitness for duty of persons in the armed forces.' "
> We express no opinion whether the offense with which the respondent in this case was charged is in fact service connected. But we have no doubt that military tribunals *do* have both experience and expertise that qualify them to determine the facts and to evaluate their relevance to military discipline, morale, and fitness.

2. But see *Cole v. Laird*, 468 F.2d 829 (5th Cir. 1972) (off base possession and use of a small amount of marihuana held not service connected); *Councilman v. Laird*, 481 F.2d 613 (10th Cir. 1973) (off base possession and transfer of marihuana to a serviceman acting for Army Criminal Investigation Division held not service connected), reversed on other grounds, *Schlesinger v. Councilman, supra*.

3. See Air Force Regulation 30–2, Social Actions Program, 1 August 1974, paragraphs 4–32 and 4–39.

4. The United States Supreme Court has not yet decided a factual issue involving the exercise of military jurisdiction over off base drug offenses. However, in *Schlesinger v. Councilman, supra*, footnote 34, The Court noted the Solicitor General's statement that " 'drug abuse is a far more serious problem in the military context than in civilian life'," and opined:

For the reasons stated, we find that a legal basis existed for the exercise of military jurisdiction over the accused's offenses.

The findings of guilty and the sentence are

AFFIRMED.

EARLY, Senior Judge, and FORAY, Judge, concur.