## UNITED STATES

### v.

**Airman First Class Benjamin BATSON, Jr., FR 527–98–6981 Headquarters, 22d Bombardment Wing Fifteenth Air Force (SAC).**

**ACM 21825 (f rev).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 Jan. 1975.

Decided 24 Nov. 1976.

---

1. *United States v. Walter*, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971).

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain William T. Snyder.

Before BUEHLER, HERMAN and ORSER Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

HERMAN, Judge:

In an order dated 6 February 1976, the Court of Military Appeals vacated our previous unpublished opinion in this case, remanded the record to this Court, and directed us to hold further proceedings in abeyance pending their disposition of five other cases. Subsequent to that Court's decisions in those cases,[1] appellate defense counsel requested that we await the decision in the case of *United States v. McCarthy*,[2] as the jurisdictional issue therein was essential for resolution of all issues in this case.

In a general court-martial tried 16–18 January 1975, before members, the accused was convicted, despite his pleas, of possession and use of marihuana and sale of cocaine, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and, pursuant to his pleas of possession and use of amphetamines, in violation of Article 92[3]. The approved sentence was confinement at hard labor for 24 months, forfeiture of $125.00 per month for 24 months, and reduction to airman basic.

---

1. *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976); *United States v. Mosely and Sweisford*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976); *United States v. Graves*, [order] (6 August 1976); *United States v. Jackson*, [order] (2 July 1976).

2. 2 M.J. 26 (24 September 1976).

3. The accused was also found guilty, pursuant to his pleas, of a six-day absence without leave and willful damage to government property, and despite his pleas, of two failures to obey verbal orders and communication of a threat, in violation of Articles 86, 92, 108, and 134, Code, supra, but they present no questions of law or fact.

Appellate defense counsel aver that the court-martial lacked jurisdiction to try the accused for the drug offenses since they occurred beyond the confines of a military installation. We disagree. Initially, we reiterate the language of *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), that it is not jurisdiction but the *exercise of jurisdiction* that is in question in these cases. Interpreting *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), Justice Blackmun wrote:

> The question was not whether O'Callahan could have been prosecuted; it was, instead, one related to the forum, that is, *whether,* as we have said, *the exercise of jurisdiction by a military tribunal,* pursuant to an act of Congress, over his non-service-connected offense *was appropriate* when balanced against the important guarantees of the Fifth and Sixth Amendments . . . *The Court did not hold that a military tribunal was and always had been without authority to exercise jurisdiction over a nonservice-connected offense.* (Emphasis supplied.)

*Gosa v. Mayden,* supra, 413 U.S. at 677, 93 S.Ct. at 2935.

In *McCarthy,* the Court of Military Appeals found that the transfer of three pounds of marihuana to another serviceman "just outside" a gate to Fort Campbell, Kentucky, was service-connected as that term was used in *O'Callahan v. Parker,* supra, and elaborated upon further in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). The Court found significant the fact that the transaction was arranged in the accused's unit on post, even though the transfer took place in the civilian community. It enunciated four factors which weighed in favor of military jurisdiction in that case, which bear heavily upon the instant case:

1. The formation of the criminal intent for the offense on-post.

2. The substantial connection between the defendant's military duties and the crime.

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

*United States v. McCarthy,* supra, 2 M.J. at 27.

In order to determine whether the exercise of military jurisdiction was proper in this case, we must examine in detail the circumstances of each off-base drug offense. In Specification 1 of Charge I, the accused is charged with possession of approximately 1 kilogram of marihuana. The possession resulted from its joint purchase by the accused and an Airman Obhie Robinson. According to Airman Robinson, who worked in the same duty section as the accused, the accused proposed this joint purchase some nine or ten days before it was made. The two intended to divide the marihuana into more than 30 one-ounce "lids" and sell most of them at a profit, reserving a few for their personal use.

Robinson received part of his share of the profits of the sale of the marihuana from another airman who worked in the WAF Squadron. Robinson would advertise the fact that the accused had marihuana for sale to others, and would direct them to the accused, who executed the sales. To this situation, the words of Chief Judge Fletcher have direct application:

> The military interest in this offense is pervasive. The entire criminal venture was developed by soldiers who had associated in their military unit and both of whom knew that the next most likely recipient of their contraband would be fellow soldiers on post. Under such circumstances, the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense.

*United States v. McCarthy,* supra, 2 M.J. at 29.

■ Although the accused is not charged with wrongful transfer as in *McCarthy,* but

rather wrongful possession, of marihuana, we see no substantial distinction between the cases. In both it is clear that the unlawful substance was ultimately intended to be purveyed, at least in part, on a military installation to fellow servicemen. Examining the *Relford*[4] criteria, we find substantial connection between the accused's duties and the crime. We find further that the intent to come into possession of the marihuana was formulated and agreed upon through on-base contacts, and thus flouted military authority, *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974). Finally, we find this possession to be a distinct threat to military personnel and to the military community due to the ready availability of the marihuana to on-base personnel and dependents. We therefore find the predominant interest in the prosecution of this offense to be in the military, and not the civilian, community. See also *United States v. Smith*, No. 21858 (f. rev.), 2 M.J. 1235 (A.F.C.M.R. 22 October 1976).

The evidence relative to Specification 2, Charge I, reveals that the accused, Airman Robinson and two others who assisted them in cleaning and packaging the marihuana after its purchase partook in smoking a portion of it. Using the same standards given to us in *Relford* and *McCarthy*, we find proper the exercise of military jurisdiction over this offense, as well. The language of *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969) is particularly apt:

. . . [U]se of marihuana and narcotics by military persons on or off a military base has special military significance. In *United States v. Williams*, su-

pra, [8 U.S.C.M.A. 325, 24 C.M.R. 135 (1957)] we noted that the use of these substances has "disastrous effects . . on the health, morale and fitness for duty of persons in the armed forces" . .

See also *Schlesinger v. Councilman*, 420 U.S. 738, 760 n. 34, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Rainville v. Lee*, 22 U.S.C.M.A. 464, 47 C.M.R. 554 (1973); *United States v. Castro*, 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969); *United States v. Murphy*, No. 21960 (f. rev.), 2 M.J. 704 (A.F.C.M.R. 10 November 1976); *United States v. Coker*, 2 M.J. 304 (A.F.C.M.R. 29 October 1976). In our judgment the use of marihuana, whether on or off a military installation, so debilitates a military member as to make him unfit for the performance of his duties. Use of marihuana has a direct and deleterious effect upon the state of readiness of the military forces and, as such, upon the defense of the nation. Therefore, the military interest in the prosecution of such offenses is far greater than, if not exclusive of, the interest of the civilian community; under these circumstances, we find the exercise of military jurisdiction to be entirely proper.[5]

Specification 4 of Charge I alleges a sale of cocaine to Airman Robinson. This sale was a "controlled" purchase, as the Office of Special Investigations provided the funds to Airman Robinson, who had by this time become their informant. Robinson learned of the availability of the cocaine through the accused and others at his duty section. The common knowledge in the duty section of the accused's possession and intent to sell cocaine provides the

---

4. *Relford v. Commandant*, supra, 401 U.S. at 359, 91 S.Ct. 649.

5. But see *Cole v. Laird*, 468 F.2d 829 (5th Cir. 1972). In this regard, an additional basis for the exercise of military jurisdiction in this case is the close connection between the contemporaneous use of marihuana and possession of a kilogram of the same, the exercise of jurisdiction over the latter offense having been clearly established. In *United States v. Rock*, 49 C.M.R. 235 (A.F.C.M.R.1974), pet. denied (23 December 1974), Senior Judge Roberts of this Court stated,

One implication arising from the combination of the three expressed opinions with regard to service connection in *Gosa*, and the "forum appropriateness" holding of the plurality, is that if a serviceman is properly before a court-martial on charges alleging a clearly service connected offense, he might also be tried for a nonservice connected offense.

*Id.* at 238. *United States v. Campbell*, 2 M.J. 689 (A.F.C.M.R. 19 October 1976). *United States v. Gaylord* (A.F.C.M.R. 15 October 1976).

strongest argument for the exercise of military jurisdiction: the making available to the on-base military community of a narcotic drug. In our view, it is entirely immaterial where the ultimate sale or transfer takes place; if the information relative to the availability of drugs is gleaned from on-base contacts and the sale or transfer is made to a military member known to be such by the accused, we hold that the predominant interest in the offense is in the military, not the civilian, community. This is obviously a blatant flouting of military authority and a serious threat to the military community. *United States v. Sexton*, supra; *United States v. Campbell*, 2 M.J. 689 (A.F.C.M.R. 19 October 1976).

For the reasons presented above, we also find proper the exercise of military jurisdiction over the offenses of possession and use of amphetamines alleged in Charge II and Additional Charge IV. A particularly vivid example of the threat to military effectiveness is provided by the facts in this case: discovery of the offense was a result of the accused being brought to the emergency room of the base hospital by two friends who related that he had taken an overdose of amphetamines, later admitted by the accused to be as many as 40 pills in a 24-hour period. The accused's pulse and blood pressure were extremely elevated, and he required emergency treatment. The argument some frequently advance that personal drug offenses are "victimless" crimes becomes an absurdity under these circumstances.[6]

█ The only remaining issue to be resolved is the effect of charging the accused under Article 134 Code, supra, rather than Article 92, for the offenses alleged in Charge I, possession and use of marihuana and sale of cocaine. Of the cases for which we have held this decision in abeyance in accordance with the order of the Court of Military Appeals, we find that only *United States v. Courtney*, supra, note 1, is in point.[7] In that case, it was held that the military judge erred when he denied a defense motion to limit the maximum confinement authorized for marihuana possession to the two years provided for a violation of Article 92, Code, supra, rather than the five years authorized by Article 134. In the present case, although there was no similar defense motion before the trial judge, we shall assume for purposes of this decision that *Courtney* would require a reduction from 20 to 6 years as the maximum period of confinement for the three drug offenses alleged in Charge I. The trial judge instructed the court members that the maximum confinement they could impose was 29 years, and, if *Courtney* is applied, the maximum confinement instructed should have been 15 years for all offenses of which the accused was found guilty. The approved

---

6. The language of Circuit Judge Rives in *Peterson v. Goodwin*, 512 F.2d 479 (5th Cir. 1975) is apropos in this regard:

Heroin addiction among the servicemen at an Air Force base poses a unique threat to the operation of the base. Unless the airmen can respond quickly to orders and can adequately operate the complicated weapons and material subject to their use, the base will be unable to fulfill its vital functions in the defense of our Nation. . . .
. . . Heroin addiction presents a serious threat to the good order and discipline of our armed forces. A court-martial has power to deal with that threat. We hold that the sale of heroin by one airman to another is sufficiently related to the functioning of the armed forces for a court-martial to acquire jurisdiction over the offense and the offenders, notwithstanding the attenuating circumstances that at the time of sale both airmen were off base, off duty, and out of uniform.

*Id.* at 480. See also *Committee for GI Rights v. Calloway*, 171 U.S.App.D.C. 73, 518 F.2d 466 (1975).

7. The *Jackson* case, supra, note 1, was summarily disposed of on the same grounds as *Courtney*. *United States v. Graves*, supra, note 1, was also disposed of by reference to *Courtney*, but also cited *United States v. Harden*, 24 U.S.C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976), which dealt with the question of an improvident plea of guilty as a result of a misunderstanding of the maximum confinement permissible; in the instant case, the accused pleaded not guilty to the drug offenses alleged under Article 134. The *Mosely and Sweisford* cases, supra, note 1, decided issues of multiplicity of charges and impropriety of trial counsel argument, neither of which is present in this case.

sentence of the court extended to only two years confinement at hard labor, however, and the accused was convicted of a broad variety of serious offenses against military authority, persons, and property, as well as offenses involving several types of illicit drugs. Furthermore, the record indicates that on 5 May 1976, after the accused served less than 16 of the 24 months confinement and had forfeitures collected for a similar period, the unexecuted portion of his sentence was remitted and he was placed in excess leave status. The adverse effects of any error in instruction on the maximum punishment, when considered in the light of these facts, appear, in the words of Judge Cook in *United States v. Mosely*, supra note 1, to have been fully dissipated, and we find no fair risk of prejudice to the accused.[8]

For the foregoing reasons, the findings of guilty and the sentence are, once again,

AFFIRMED.

BUEHLER, Senior Judge, concurs.

ORSER, Judge, concurring in the result:

Although I agree in all other respects, for the reasons stated in my concurring opinion in *United States v. Meck*, 2 M.J. 308 (A.F.C.M.R. 29 October 1976), I do not join in the majority's assumption for purposes of discussion (citing *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976)) that the military judge committed error by instructing the court members that the maximum imposable confinement was that prescribed by Article 134 of the Uniform Code of Military Justice. I perceive no error here, for the military judge did not miscalculate the maximum punishment legally imposable at the time the case was tried, and the decision in *Courtney*, which postdates the trial of this court-martial, should be accorded only prospective application. *United States v. De La Fuente*, No. 21864 (f. rev.), 2 M.J. 668 (A.F.C.M.R. 16 September 1976); *United States v. Sasportas*, No. 21917 (f. rev.), 2 M.J. 676 (A.F.C.M.R. 23 September 1976).

8. See also *United States v. Brown*, 2 M.J. 713 (A.F.C.M.R. —— November 1976); *United States v. Meck*, 2 M.J. 308 (A.F.C.M.R. 29 October 1976).