**UNITED STATES**

v.

**Sergeant Steven K. FOX, FR 229–82–2553 43d Security Police Squadron Fifteenth Air Force (SAC).**

**ACM S24446.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 25 June 1976.

Decided 31 Jan. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain William T. Snyder.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

HERMAN, Judge:

In a special court-martial composed of members, the accused was convicted, despite his pleas, of one specification each of sale and possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence includes a bad conduct discharge, confinement at hard labor for four months and reduction to airman basic.

The accused has submitted four allegations of error in his request for appellate representation, and appellate defense counsel have assigned two others. We shall discuss two of the accused's averments, finding the others to be without merit or adequately discussed and correctly resolved adversely to him in the post-trial review of the staff judge advocate.

Inasmuch as the offenses took place in the off-base environment, the threshold question raised by appellate counsel is the propriety of the exercise of jurisdiction by military authorities. *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Court of Military Appeals has recently spoken twice respecting the exercise of jurisdiction by the military over off-base drug offenses. In *United States v. McCarthy*, 25 U.S.C. M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), the Court held proper the exercise of jurisdiction over an off-base sale of three pounds of marihuana, where arrangements for the sale had been made on base, and the purchaser was known to the accused to be a military member and a purveyor of drugs. In *United States v. Williams*, 25 U.S.C.M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (1976), a divided Court dismissed a charge of possession of hashish in an off-base apartment, stating, "jurisdiction did not lie in the court-martial to try it."[1]

---

1. We interpret this to mean that the *exercise* of jurisdiction was not proper. *Gosa v. Mayden*, 413 U.S. 665, 677, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

In the instant case, the sale took place at the accused's off-base residence. Sergeant McGrath, the informant who purchased the marihuana from the accused, conversed with him the morning of the sale in the barracks on base:

Q. . . . [W]hat happened after that?

A. Then Sergeant Fox asked me did I want to buy some bricks of marijuana for $250, and I replied, "Yeah, I'll buy 'em for $200 a piece."

Q. And what did Sergeant Fox reply to that?

A. He said "That's a good deal." Then I set up a time which was between 1800, 2000 the same evening to go by his house and pick it up.

Q. Did you know where his house was?

A. Yes, sir, I did.

Thus, the arrangements for the subsequent off-base sale were made on base and the criminal intent was formulated on base; this provides sufficient service connection, together with the accused's knowledge of the purchaser's military status, for the exercise of court-martial jurisdiction. *United States v. Sexton,* 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974); *United States v. Batson,* 54 C.M.R. 488, 2 M.J. 716 (A.F.C.M.R. 1976); *United States v. Gash,* 54 C.M.R. 463, 2 M.J. 707 (A.F.C.M.R.1976); *United States v. Murphy,* 54 C.M.R. 454, 2 M.J. 704 (A.F.C.M.R.1976); *United States v. Smith,* No. 21858 (f. rev.), 2 M.J. 1235 (A.F.C.M.R. 22 October 1976).

We are also convinced that military jurisdiction over the possession offense was properly exercised as a result of its close time relationship to the sale, and the clear implication that the marihuana possessed was intended for sale to servicemen. *United States v. Rock,* 49 C.M.R. 235 (A.F.C.M. R.1974), pet. denied (23 December 1974), citing *Gosa v. Mayden,* supra; Cf. *United States v. Williams,* supra. However, we need not belabor this issue as we find merit in the defense averment that the accused's consent to the search giving rise to the discovery of marihuana was not freely given.

The evidence at trial showed that shortly after the sale of marihuana, Air Force Office of Special Investigations (OSI) agents and Guamanian police arrived at the accused's home where a barbeque was in progress. The OSI placed him under apprehension in his backyard, subjected him to a pat-down search, advised him of his rights under Article 31, Code, supra, and his rights to counsel, and escorted him to an OSI vehicle. He was left alone in the car for about three minutes while the OSI and police identified and frisked others present at the scene. Upon returning to the OSI vehicle, one of the agents asked the accused whether "it would be all right if we went into his home where there was adequate lighting so we could talk." According to this agent: "I can't quote him [the accused] but I understood—he replied in the affirmative—that he didn't object to us going in."

After they proceeded into the house and sat at the kitchen table, the agent again advised the accused of his rights and asked whether he would consent to a search of the home and his person. During this time, the agent noticed a plastic baggie of what appeared to be marihuana on the table at which they were seated. Guamanian police were present when they entered the house, and moving about while the consent was being discussed, until the accused demanded that the OSI agents have them leave. The accused repeatedly asked the agents what their "probable cause" was to break up his barbeque, and, although the agents deny ever replying to his inquiries, the accused testified that Agent Jones eventually advised him, "observation, my boy," and "affidavit."[2] The accused signed the consent

---

2. Their versions of the facts are also contradictory regarding request for counsel, as the accused asserts he did make such request several times (which testimony is somewhat corroborated), while Jones denies such a request was made at all. The consent for search form indicates that the accused did not desire to consult with counsel; however, his initials do not ap-

for search form, and one of the agents immediately seized the baggie on the table, later determined to be seven grams of loose marihuana. Three hours after this event, and still during the search, the accused voluntarily surrendered a toiletries bag containing another 69 grams of marihuana, in the same form as that previously sold to McGrath, i. e., rolled and tied. This and the loose marihuana constitute the subject matter of the possession charge.

■ A search of property may lawfully be made with the freely given consent of the owner. Manual for Courts-Martial, 1969 (Rev.), paragraph 152. However, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). See also United States v. Mayton, 23 U.S.C.M.A. 565, 50 C.M.R. 784, 1 M.J. 171 (1975); United States v. Smith, 13 U.S. C.M.A. 553, 33 C.M.R. 85 (1963). The burden of the government to prove free and voluntary consent is especially heavy if the accused is in custody when the consent was purportedly given. United States v. Justice, 13 U.S.C.M.A. 31, 32 C.M.R. 31 (1962); United States v. Decker, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966).

■ On the other hand, although an accused need not be advised of his rights under Article 31, Code, supra, his rights to counsel, or his right not to consent to a search of his property prior to securing his consent, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Noreen, 23 U.S.C. M.A. 212, 49 C.M.R. 1 (1974); United States v. Rushing, 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967); United States v. Insani, 10 U.S.C. M.A. 519, 28 C.M.R. 85 (1959), such advice may be "strong evidence that the individu-

al's assent to the search was voluntary." United States v. Noreen, supra, at page 3.

Justice Stewart, writing the majority opinion in Schneckloth v. Bustamonte, supra, states the rule concisely:

. . . [I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches.

412 U.S. at page 233, 93 S.Ct. at page 2050.

Earlier in that opinion, Justice Stewart explained the balancing of the legitimacy of consent searches with the requirement that they be free from any aspect of official coercion:

To approve such searches without the most careful scrutiny would sanction the possibility of official coercion; to place artificial restrictions upon such searches would jeopardize their basic validity. Just as was true with confessions, the requirement of a "voluntary" consent reflects a fair accommodation of the constitutional requirements involved. In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.

Id. at page 229, 93 S.Ct. at pages 2048–2049.

■ In the case before us, a number of factors must be balanced: The accused, in custody, was twice advised of his rights under Article 31 and to counsel, and also of his right to refuse consent to the search. He signed a consent form, prepared by the agent. On the other hand, prior to the accused's signing of the form, the agents had entered his home, using the pretext of better lighting within. Subtle factors, such as the baggie of marihuana in open view on the kitchen table where the consent form

pear anywhere on the form, including the election against the presence of counsel. Agent Jones admits that normal procedure dictates

that a suspect is asked to initial such election on the form as well as sign at the bottom.

was prepared, the presence and movement about the house of the OSI agents and Guamanian police while the accused and the agents discussed consent to search, and the accused's repeated requests for their "probable cause," lead us to conclude that the consent was not completely free from coercive elements.

■ In particular, the accused testified that the agents simply told him to follow them, whereupon they all entered. The accused's statements, "the assumption I was getting, they were searching my house anyway because they were mingling around. I just signed that just to be cooperative with the agents" clearly indicate that his consent was, at least in part, influenced by what amounted to a *fait accompli*, as law enforcement officers had already been looking about the home.[3] Under these circumstances, we hold the consent not to be freely and voluntarily given. The marihuana found on the kitchen table and that surrendered later that evening during the search were inadmissible; therefore, Specification 3 alleging possession of marihuana must fail for lack of independent evidence,[4] and is hereby dismissed. *United States v. Kinane*, 24 U.S.C.M.A. 120, 51 C.M.R. 310, 1 M.J. 309 (1976).

■ Although not alleged by counsel, we find the military judge erred in his instructions to the members respecting the maximum punishment they could adjudge. The instructions given included bad conduct discharge, forfeiture of two-thirds pay per month for six months, and reduction to airman basic, but made no reference to confinement at hard labor. Since the sentence included confinement, there is obvious prejudice. We disapprove that portion of the sentence adjudging four months confinement as it exceeded the maximum sentence limitations set by the military judge.

*United States v. Crawford*, 12 U.S.C.M.A. 203, 30 C.M.R. 203 (1961); *United States v. Buford*, 31 C.M.R. 685 (A.F.B.R.1962).

We have reassessed the remaining sentence consisting of a bad conduct discharge and reduction to airman basic and find it appropriate for the remaining offense.

For the foregoing reasons, the findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

BUEHLER, Senior Judge, concurs.

ORSER, Judge, absent.

---

3. It is relevant to the accused's subjective state of mind that he had reached the conclusion that the OSI agents and police had a search warrant, or at least, the probable cause to perform a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

4. In a similar recent case, this Court found only acquiescence or submission to police authority in a search where police were already within the home and had seen drugs, and the accused was in custody. *United States v. Felton*, 51 C.M.R. 480, 1 M.J. 719 (A.F.C.M.R.1975).