UNITED STATES, Appellant,

v.

Carlos J. TORRES, Lance Corporal,
U. S. Marine Corps, Appellee.

No. 36,509.
NCM 78 0332.

U. S. Court of Military Appeals.

June 18, 1979.

For Appellant: *Lieutenant Vance J. Bettis,* JAGC, USNR (argued).

For Appellee: *Major D. A. Higley,* USMC (argued); *Commander T. C. Watson, Jr.,* JAGC, USN, *Lieutenant Commander Paul B. Thompson,* JAGC, USN (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was found guilty at a special court-martial of the use of provoking words, robbery, and assault with the intent to commit robbery, in violation of Articles 117, 122 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 917, 922 and 934, respectively. He was sentenced by the mili-

tary judge to a bad-conduct discharge, confinement at hard labor for 4 months, forfeiture of $220 pay per month for the same period and reduction to the grade of E–1. The convening authority, in accordance with a pretrial agreement, approved this sentence with the exception of confinement, which he reduced to a period of 1 month. The supervisory authority approved this sentence. The United States Navy Court of Military Review set aside these findings and the sentence and dismissed the charges against the appellant on the basis of our decision in *United States v. Russo*, 1 M.J. 134 (C.M.A.1975). The Court of Military Review also denied a petition for reconsideration subsequently submitted by the Government.

In accordance with Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), the Judge Advocate General of the Navy has forwarded the record of trial and decision of the Court of Military Review to this Court for consideration of the following issues:

I

Assuming a first enlistment procured through recruiter misconduct [*United States v. Russo*, 1 M.J. 134 (C.M.A.1975], must the Government prove that a second enlistment of an individual is cured of any defects existing with the first enlistment before an individual is subject to *in personam* court-martial jurisdiction when there is no evidence to indicate that the second recruiter had knowledge of the alleged misconduct of the first recruiter?

II

Assuming a first enlistment procured through recruiter misconduct [*United States v. Russo*, 1 M.J. 134 (C.M.A.1975], in cases arising between July 1977 and August 1978 in which a second enlistment is determined not to be free of all defects of the first enlistment, despite the second recruiter's lack of knowledge of the misconduct of the first recruiter, is not a rehearing on the jurisdictional issue, rather than a dismissal of the charges, the proper remedy, in light of the good faith

reliance of military authorities on prior law as announced by the United States Navy Court of Military Review in *United States v. Crowe*, No. 77 0552 (NCMR 22 July 1977)? *United States v. McCarthy*, 2 M.J. 26, 28 n. 2 (C.M.A.1976); *United States v. Dubay*, 17 U.S.C.M.A. 247, 37 C.M.R. 411 (1967); *see Stovall v. Denno*, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967).

The facts in this case were succinctly stated by the Court of Military Review in its opinion:

Appellant enlisted in the United States Marine Corps Reserve (Class "J") program on 23 July 1974. On 14 August 1974, he was enlisted into the Regular Marine Corps and commenced active duty. Appellant testified that, prior to his Reserve enlistment, he informed his recruiter that he had used marijuana in the past. (R. 9). Recruiting regulations in effect at that time absolutely barred the enlistment of an applicant who had used marijuana. Paragraph 2110.1w, Military Personnel Procurement Manual (MCO P1100.61C). Appellant further testified that the recruiter told him, if he wanted to enlist in the Marine Corps, he should deny ever using or being involved with marijuana. (R. 20). Appellant indicated that he followed the recruiter's advice and denied ever using marijuana when questioned by the examining physician at the time of his enlistment into the Regular Marine Corps. (R. 11).

\* \* \* \* \* \*

In the instant case, only 22 days elapsed between the Reserve and Regular enlistments. The purpose of appellant entering into the Reserve enlistment was merely to enter a "holding pattern" until he could be brought on active duty, at which time he would enlist in the Regular Marine Corps. (R. 21). Also, the testimony of appellant that he was advised by his first recruiter to conceal his prior use of marijuana at the time of his second enlistment was not challenged at trial. (footnote omitted). Appellant states that

he did exactly as he was advised by the first recruiter. For this reason, the evidence would indicate that the alleged misconduct of the first recruiter was directly involved and incorporated into the second enlistment.

In light of these facts we approach the aforementioned questions of law proffered by the Judge Advocate General of the Navy for our consideration.

■ The first certified question for review must be answered in the affirmative in light of the facts and circumstances of the present case. This simply is not the situation where the enlistments are so separate or unrelated that irregularities in the first enlistment can be considered of "no moment" as a matter of fact and law to the validity of the second enlistment upon which court-martial jurisdiction is purportedly based. *Cf. Blackington v. United States*, 248 F. 124, 125 (1st Cir. 1918). What we do have in this case is the situation where the initial enlistment in the Marine Corps "J" program was intended by law [1] and in fact [2] to lead to the second enlistment in the Regular Marine Corps. Any technical, if not artificial, distinction between the two enlistments we find without importance for the purposes of court-martial jurisdiction over this appellant.

In addition, and perhaps more importantly, this is not the case where misconduct on the part of the first recruiter in the initial enlistment can be said to have not rendered the second enlistment "irregular or unfair." *Cf. Blackington v. United States, supra.* The first recruiter created the situation where the appellant would be eventually called for his second enlistment at the Armed Forces Entrance and Examination Station, counseled him unlawfully to conceal his regulatory disqualification at that time, and took no steps [3] with such knowledge to prevent this unlawful enlistment from occurring. Simply because some other government agent who participated in the recruiting process was innocently deceived by such deliberate fraud in no way obviates its unlawfulness within the meaning of Article 84, UCMJ, 10 U.S.C. § 884.

We believe that allegations of such misconduct by a recruiter, if unrebutted, clearly establish that the second enlistment of the appellant was brought about in violation of Article 84, UCMJ. There is no doubt that such action by the first recruiter smoothed the path for the appellant's second enlistment in contravention of service regulations. *See United States v. Russo, supra.* We agree with the Navy Court of Military Review in its accurate assessment of the factual and legal realities of this situation. Accordingly, in view of our holding in *United States v. Russo, supra*, we would likewise require the Government, when such issues are reasonably raised, to affirmatively establish that the first re-

---

1. It is clear that the Marine Corps Reserve "J" program anticipates three possible results from enlistment therein. First, the reservist will enlist a second time in the Regular Marine Corps for an extended period of active duty upon completion of the delay period. Second, he will report for extended active duty as a reservist for a considerable period of time. Third, if he fails to report for extended active duty at the end of the delay period, he will be processed as an unauthorized absentee and be subject to court-martial. *See* Marine Corps Military Personnel Procurement Manual § 2404.

   The Navy Delayed Entry Program, Chapter 12 of COMNAVCRUITCOMINST 1130.8A, which is conceded by the Government to be without distinction from the above mentioned Marine Corps "J" program, articulates more clearly its reason for being.

   12–1d. At the time of initial contact with a prospective applicant, the fact will be made clear that, although the program does provide for extended active duty in the U.S. Naval Reserve, the ultimate objective is for enlistment in the Regular Navy. Those applicants who do not desire to subsequently enlist in the Regular Navy will not be enlisted in this program.

2. It is unrebutted in the record of trial that the purpose of the appellant's entry into the Marine "J" program was only to delay his entry into the Regular Marine Corps until a friend could also be so enlisted.

3. It is again unrebutted in the record of trial that the appellant was contacted by his first recruiter by telephone immediately prior to his second enlistment and told to report to the Armed Forces Entrance and Examination Station for that purpose.

cruiter's misconduct did not occur, or did not occasion the second enlistment upon which court-martial jurisdiction is based.

■ In light of our position on the prior matter, it is clear that the second question certified by the Judge Advocate General must be answered in the negative. This jurisdictional issue is clearly controlled by this Court's decision in *United States v. Russo, supra.* Our resolution of the issue today establishes no new case law to fill a purported gap created by our earlier decisions. Moreover, Judge Mallery, in *United States v. Crowe, supra,* found no recruiter misconduct in that case at all and there was no allegation nor evidence that the initial recruiter in that case had any part in the subsequent enlistment. This is not the situation in the appellant's case. Furthermore, to the extent his gratuitous comments conflict with our clear holding in *United States v. Russo, supra,* we find any reliance placed thereon to be misplaced and without proper authority.

Accordingly, the decision of the United States Navy Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring):

The majority affirm dismissal of the charges by the Court of Military Review on the basis of this Court's decision in *United States v. Russo,* 1 M.J. 134 (C.M.A.1975). I agree that the circumstances of the present case require dismissal under the doctrine of *Russo;* however, as I am now convinced that the public policy considerations inherent in *Russo* have not been served by its doctrine, I would not apply it in future cases.

In *Russo,* the accused alleged that the court-martial which tried him lacked jurisdiction because a recruiter had improperly assisted him in answering the questions to an Armed Forces Qualifications Test to assure his eligibility for enlistment. The Government argued that *In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), required rejection of the accused's argu-

ment. In *Grimley,* the Supreme Court held that an accused who exceeded the statutory maximum age for enlistment could not assert such disqualification as a bar to trial by court-martial. We rejected the government's argument with the following comment:

Because fraudulent enlistments are not in the public interest, we believe that common law contract principles appropriately dictate that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, as was the situation here, the resulting enlistment is void as contrary to public policy. Hence the change of status alluded to in *Grimley* never occurred in this case.

*United States v. Russo, supra* at 137 (footnotes omitted). *Accord, United States v. Little,* 1 M.J. 476 (C.M.A.1976); *United States v. Muniz,* 1 M.J. 151 (C.M.A.1975); *United States v. Burden,* 1 M.J. 89 (C.M.A. 1975).

The Court has likewise refused to apply the *Grimley* doctrine in cases where the accused was given an alternative of enlisting in the military in lieu of civilian criminal proceedings contrary to service regulations, and the recruiter participated in the process. *United States v. Catlow,* 23 U.S.C. M.A. 142, 48 C.M.R. 758 (1974); *accord, United States v. Barrett,* 1 M.J. 74 (C.M.A. 1975). In *Catlow,* the Court distinguished *Grimley* on the basis that the accused was coerced into the enlistment. 23 U.S.C.M.A. at 145, 48 C.M.R. at 761.

In *Grimley,* the Supreme Court observed that the age limitation was for the benefit of the Government and it has been submitted that the doctrine should not be applied where the criterion is for the benefit of both the accused and the Government. Initially, I note that the Supreme Court observed the following as to the matter:

On the other hand, suppose for any reason it could be contended that the proviso as to age was for the benefit of the party enlisting, is Grimley in any better position? The matter of age is merely incidental, and not of the substance of the contract. And can a party by false repre-

sentations as to such incidental matter obtain a contract, and thereafter disown and repudiate its obligations on the simple ground that the fact in reference to this incidental matter was contrary to his representations? May he utter a falsehood to acquire a contract, and plead the truth to avoid it, when the matter in respect to which the falsehood is stated is for his benefit? It must be noted here that in the present contract is involved no matter of duress, imposition, ignorance or intoxication. Grimley was sober, and of his own volition went to the recruiting office and enlisted. There was no compulsion, no solicitation, no misrepresentation. A man of mature years, he entered freely into the contract.

*Id.*, 137 U.S. at 151, 11 S.Ct. at 54. This comment suggests to me that the question as to whose benefit the qualification was imposed was not a determinative factor in *Grimley.* This conclusion is reenforced by the Court's further comment regarding the concept of status, as follows:

> But in this transaction something more is involved than the making of a contract, whose breach exposes to an action for damages. Enlistment is a contract, but it is one of those contracts which changes the *status*, and where that is changed, no breach of the contract destroys the new *status* or relieves from the obligations which its existence imposes.

*Id.* at 151, 11 S.Ct. at 55. Thus, it is apparent that while the Supreme Court discussed contract concepts in *Grimley*, it did not limit the question of court-martial jurisdiction to the validity of an enlistment contract. Rather, commenting on the nature of military status, the High Court observed:

> These are matters which do not inhere in the substance of the contract, do not prevent a change of *status*, do not render the new relations assumed absolutely void; and in the case of a soldier, these consid-

erations become of vast public importance.

*Id.* at 153, 11 S.Ct. at 55.

Accordingly, as I interpret *Grimley*, the question of whether a court-martial properly exercised jurisdiction over an accused is not dependent upon a strict application of contract law, but whether the enlistment process was sufficient to change his status from civilian to military. *Grimley* clearly holds that a disqualification for enlistment does not necessarily preclude a change in status.

Thus, the Court in *United States v. Lightfoot*, 4 M.J. 262 (C.M.A.1978), rejected an argument that the alternative between military service or civilian criminal proceedings was, by itself, sufficient to defeat military service. Rather, the Court noted that a failure to comply with statutes and regulations did not, as a matter of public policy, preclude the exercise of court-martial jurisdiction. *Id.* at 263 n. 3, *citing Grimley.* As the recruiter in this case was unaware that civilian charges had been dismissed contingent on the accused's enlistment, the Court upheld the exercise of military jurisdiction.[1] Thus, the decisive factor was recruiter misconduct, rather than statutory or regulatory disqualifications.

A majority of the Court in *United States v. Wagner*, 5 M.J. 461 (C.M.A.1978), upheld the exercise of court-martial jurisdiction where the accused was disqualified for enlistment under a nonwaivable regulatory requirement.[2] The majority observed the following in affirming the conviction:

> Moreover, public policy considerations inherent in the maintenance of a disciplined and effective military to protect society at large dictate against construing such a regulatory disqualification as inherent in the substance of the contract and requiring automatic voiding of the enlistment contract without some action of the appellant prior to the commission of the offense. *In re Morrissey*, 137 U.S. 157, 11

---

**1.** I concurred in the result in *United States v. Lightfoot*, 4 M.J. 262, 263 (C.M.A.1978), on the basis that the appellant was not disqualified from enlistment.

**2.** I concurred on the basis that there was no violation of the regulation in question. *United States v. Wagner*, 5 M.J. 461, 469 (C.M.A.1978).

S.Ct. 57, 34 L.Ed. 644 (1890). Finally, since no matter of duress, imposition, ignorance or intoxication is involved in this enlistment, we find it extremely unreasonable to allow the appellant, like *Grimley*, to conceal his incidental disqualification at the time of the enlistment, and then assert it at a later date in bar of court-martial. *In re Grimley, supra.* We are of course aware that the services are required to strictly comply with their regulations, and the unknown violation of a regulation, if asserted in a timely manner, may require them to void the contract and release the recruit so disabled. *See United States v. Russo, supra.*

*Id.* at 468. *Accord, United States v. Valadez,* 5 M.J. 470 (C.M.A.1978). *See United States v. Harrison,* 5 M.J. 476 (C.M.A.1978).

Accordingly, the doctrine of *Russo* is not required by the principles of law discussed in *Grimley*, but is a doctrine imposed by this Court to enforce the public policy against fraudulent enlistments where a recruiter participates in the deception. I concurred in *Russo* as I was convinced that this public policy could be adequately enforced by the limitation imposed on court-martial jurisdiction. However, experience with the court-imposed sanction of *Russo* against recruiter misconduct convinces me that public policy has not been served by the doctrine. As *Russo*, itself, recognizes, there are other means available to enforce this public policy. *Id.* at 137 n. 8, *citing* Article 84, Uniform Code of Military Justice, 10 U.S.C. § 884. Additionally, *Russo* imposes no sanction upon the recruiter himself. Rather, it permits an accused to escape criminal responsibility for acts committed within the military when he also participates in the deception of the military authorities as to his ineligibility for enlistment. As this case

demonstrates, the *Russo* sanction is not dependent upon the mental incapacity of the accused or factors constituting coercion.

Article 67(g), UCMJ, 10 U.S.C. § 867(g), obligates the Judges of this Court, in conjunction with the Judge Advocates General, to report annually to Congress on "the operation" of the Code. To discharge that responsibility, the Judges, from time to time, visit military installations to learn at first hand the operation of the law in the field. My own observations have led me to conclude that some of the services are experiencing great difficulty in complying with this Court's pronouncement of policy in *Russo.* There is difficulty in locating the recruiter when an accused raises an issue of recruiter misconduct during a court-martial proceeding because the issue is raised several years after the enlistment of the accused. Often, the accused is unable to remember the name of the recruiter and even if he is located, the recruiter's memory of the enlistment is limited. Consequently, an accused can avoid a court-martial by simply raising an issue of recruiter misconduct under circumstances where the Government cannot rebut the claim with positive evidence. *See United States v. Washington,* 7 M.J. 78 (C.M.A.1979), which demonstrates other complications created by the *Russo* sanction. My observations have recently been confirmed by testimony by the Army Chief of Staff and other senior officials before the Subcommittee on Manpower and Personnel, Senate Armed Services Committee. Plainly, the *Russo* doctrine has been used to destroy the public policy it was designed to promote. As the public policy considerations perceived in *Russo* have been perverted, not promoted, by its sanction, I believe the rule it imposed must be abandoned.