UNITED STATES

v.

David B. LONG, 458 06 1315, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 78 0446.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 5 Dec. 1977.

Decided 29 Nov. 1983.

LCDR Georgia L. Winstead, JAGC, USNR, Appellate Defense Counsel.

LT Daniel Lippman, JAGC, USNR, Appellate Defense Counsel.

CAPT David B. Stratton, USMCR, Appellate Government Counsel.

Before EOFF, Chief Judge, and RAPP and MIELCZARSKI, JJ.

RAPP, Judge:

Appellant was convicted by special court-martial on 5 December 1977 of fourteen absence offenses in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886, and one offense of escape from custody in violation of Article 95, UCMJ, 10 U.S.C. § 895. The findings and sentence, including a bad conduct discharge, were approved by the convening authority without change on 10 February 1978. The supervisory authority on 25 February 1978 disapproved guilty findings for three of the absence offenses, reassessed the sentence, and approved the sentence approved by the convening authority. This Court set aside the findings and sentence on 11 August 1978 and dismissed the charges due to lack of *in personam* jurisdiction resulting from recruiter misconduct and failure of the Government to meet its burden in proving jurisdiction over appellant. *United States v. Long,* 5 M.J. 800 (N.C.M.R.1978). A petition for reconsideration by this Court was denied on 29 August 1978.

The Judge Advocate General of the Navy on 15 September 1978 certified the following two issues to the Court of Military Appeals pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2):

I

Assuming a first enlistment procured through recruiter misconduct [*United States v. Russo,* 1 M.J. 134 (C.M.A.1975)], must the Government prove that a second enlistment of an individual is cured of any defects existing with the first enlistment before an individual is subject to *in personam* court-martial jurisdiction when there is no evidence to indicate that the second recruiter had knowledge of the alleged misconduct of the first recruiter?

II

Assuming a first enlistment procured through recruiter misconduct [*United States v. Russo,* 1 M.J. 134 (C.M.A.1975)], in cases arising between July 1977 and August 1978 in which a second enlistment is determined not to be free of all defects of the first enlistment, despite the second recruiter's lack of knowledge of the misconduct of the first recruiter, is not a rehearing on the jurisdictional issue, rather than a dismissal of the charges, the proper remedy, in light of the good faith reliance of military authorities on prior law as announced by the United States Navy Court of Military Review in *United States v. Crowe,* No. 77 0552 (N.C.M.R. 22 July 1977)? *United States v. McCarthy,* 2 M.J. 26, 28 n. 2 (C.M.A.1976); *United States v. Dubay,* 17 U.S.C.M.A. 247, 37 C.M.R. 411 (1967); *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

*United States v. Long,* 6 M.J. 3 (C.M.A. 1978).

On 12 June 1980 the Court of Military Appeals ordered supplemental briefs on the issue:

WHAT EFFECT, IF ANY, THE ACT OF NOVEMBER 9, 1979, PUB.L. NO. 96–107, § 801, 93 STAT. 810 (10 U.S.C.

§ 802), HAS ON THE DISPOSITION OF THE CERTIFIED QUESTION.

*United States v. Long,* 9 M.J. 140 (C.M.A. 1980).

The Court of Military Appeals on 20 April 1983 provided the following reply to the Judge Advocate General's certified issues:

The amendment to Article 2 applies to the escape but not to the unauthorized absences. *United States v. Marsh,* 15 M.J. 252 (C.M.A.1983); *United States v. McDonagh,* 14 M.J. 415 (C.M.A.1983). With respect to the issue of recruiter misconduct as it applies to the unauthorized absence offenses, we believe the court below should consider the applicability of *United States v. Stone,* 8 M.J. 140 (C.M.A.1979), and *United States v. Torres,* 7 M.J. 102 (C.M.A.1979).

*United States v. Long,* 15 M.J. 472 (C.M.A. 1983).

The Court of Military Appeals further reversed the decision of this Court and returned the record to the Judge Advocate General for submission to this Court for "further proceedings." *Id.*

Appellant has assigned one error:

THE COURT–MARTIAL LACKED PERSONAL JURISDICTION OVER APPELLANT.

We have examined the record of trial, the assignment of error, the Government's reply thereto, and the Court of Military Appeals' order. As a result, we have concluded that the findings and sentence are correct in law and fact, that the court-martial had *in personam* jurisdiction over appellant, and that no error materially prejudicial to

the substantial rights of appellant was committed.

■ We first direct our attention to the effect of the 1979 amendment to Article 2.[1] In considering whether the 1979 amendment could be applied retroactively, the Court of Military Appeals has distinguished between offenses of a "peculiarly military nature," where the accused's military status is an element and must be established beyond a reasonable doubt, and other offenses, where such status is not an element. *United States v. McDonagh,* 14 M.J. 415 (C.M.A.1983). Escape from custody in violation of Article 95, UCMJ, is, by its explicit terms, not dependent on the military status of the accused, *i.e.,* "*Any person* subject to this chapter ... who escapes from custody ... shall be punished as a court-martial may direct." (Emphasis added). In the case of offenses not dependent upon the accused's military status, the 1979 amendment can be applied to cases pending on appeal when the amendment took effect. *McDonagh,* 14 M.J. at 423. Thus, the 1979 amendment applies to the offense of escape from custody in the present case, and the court-martial had *in personam* jurisdiction over appellant for trial of that offense.

■ In contrast to the offense of escape from custody, the unauthorized absences in the present case are not subject to the retroactive application of the 1979 amendment to Article 2, as those offenses are dependent upon the "peculiarly military status" of the accused, and retroactive application of the 1979 amendment would violate constitutional prohibition against *ex*

---

1. The Act of November 9, 1979, Pub.L. No. 96–107, § 801, 93 Stat. 810 added the following language to the end of Article 2 of the Uniform Code of Military Justice, 10 U.S.C. § 802:

(b) The voluntary enlistment of any person who has the capacity to understand the significance of enlisting in the armed forces shall be valid for purposes of jurisdiction under subsection (a) of this section and a change of status from civilian to member of the armed forces shall be effective upon the taking of the oath of enlistment.

(c) Notwithstanding any other provision of law, a person serving with an armed forces who—

(1) submitted voluntarily to military authority;

(2) met the mental competency and minimum age qualifications of sections 504 and 505 of this title at the time of voluntary submission to military authority;

(3) received military pay or allowances; and

(4) performed military duties;

is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned.

*post facto* laws. *United States v. Marsh,* 15 M.J. 252 (C.M.A.1983); *United States v. McGinnis,* 15 M.J. 345 (C.M.A.1983). Instead we must reexamine the facts of the present case and the applicable case law to determine whether the alleged recruiter misconduct was sufficient to create reasonable doubt of *in personam* jurisdiction over appellant in relation to the absence offenses.

■ Appellant was enlisted into the United States Marine Corps Reserve (J) program on 15 January 1975. On 10 February 1975 he was discharged from that program and on 11 February 1975 he was enlisted into the regular Marine Corps. At trial appellant testified that, prior to his enlistment into the reserve program, he was required to take the Armed Services Vocational Aptitude Test (ASVAT). His recruiter, upon learning that appellant was not a high school graduate, expressed apprehension that appellant would not score well enough on the ASVAT and provided the answers to the test for appellant, who studied them in advance. Appellant subsequently achieved a suitable score on the ASVAT and was enlisted into the reserve program. He took no further service test until after his enlistment into the regular Marine Corps. The record indicates appellant's enlistments into the reserve program and the regular Marine Corps were processed by separate recruiters at different locations. The prosecution at trial presented no evidence on the jurisdictional issue, depending instead on cross-examination of appellant and referral to the defense evidence on the motion to dismiss.

The Court of Military Appeals' Order has directed our attention to two cases decided by that Court subsequent to this Court's decision in the present case. We now turn our attention to those cases.

*United States v. Torres,* 7 M.J. 102 (C.M.A.1979), was decided by this Court contemporaneously with the present case and the decision was the same—dismissal of all charges due to recruiter misconduct. The Judge Advocate General of the Navy certified the same two issues as in the present case to the Court of Military Appeals. The facts in *Torres* are similar to the present case. The accused was enlisted into the Marine Corps Reserve (J) program and twenty-two days later was enlisted into the regular Marine Corps; the interval was twenty-seven days in the present case. Both cases involved deliberate recruiter misconduct. The difference in the two cases lies in the nature of the misconduct. In *Torres* the accused testified that he admitted preservice marijuana use to the recruiter before enlistment into the reserve program, and was counseled by the recruiter to deny such involvement in further enlistment proceedings. At that time preservice marijuana use was an absolute bar to enlistment in the Marine Corps. The Court of Military Appeals characterized this course of conduct as "deliberate fraud" and, for a number of reasons, found that the recruiter misconduct related to the accused's enlistment into the reserve program carried over to the enlistment into the regular program, even if recruiting personnel involved with the second enlistment were "innocently deceived." As the Government had not affirmatively established that no recruiter misconduct had occurred or that such misconduct did not occasion the second enlistment, this Court's decision was affirmed.

Were we to consider only *Torres,* the similarity in facts to the present case and the Court of Military Appeals' rationale would strongly pull us again toward dismissal of the absence charges due to recruiter misconduct. The second case to which we are directed by the Court of Military Appeals' Order, however, points us in the opposite direction. In *United States v. Stone,* 8 M.J. 140 (C.M.A.1979), the accused was enlisted into the Navy's Delayed Entry Program, which is akin to the Marine Corps Reserve (J) Program, and within a relatively short time thereafter was enlisted into the regular Navy. The accused testified at trial that he had admitted preservice marijuana use (a waivable bar to enlistment) to his first recruiter, who had not only failed to obtain a waiver but also falsified the

accused's enlistment application with regard to marijuana use. In its opinion, the Court of Military Appeals distinguished between "deliberate enlistment of a person who may not be allowed in the service under any circumstances," and "fraudulent failure to secure a waiver for an otherwise qualified enlistee." *Id.* at 141 n. 1. Determining that the accused fell into the second category, the court refused, as a matter of "public policy," *id.* at 142, to find recruiter misconduct sufficient to negate *in personam* jurisdiction over the accused.

*Torres* and *Stone* represent stages of evolution in the Court of Military Appeals' attempt to fashion a workable rule in the area of recruiter misconduct. In *United States v. Russo,* 1 M.J. 134 (C.M.A.1975), the Court created a broad rule drastically penalizing recruiter misconduct in general. Experience with the practical effects of the *Russo* doctrine led the Court to doubt its efficacy, as military authorities were suffering greatly in grappling with the practicalities resulting from a strict interpretation of *Russo* while other means to weed out inept or untrustworthy recruiters were available which would have had a less drastic effect on the military justice system. *Torres,* 7 M.J. at 107 (Cook, J., concurring). By the time of the *Stone* decision the Court was taking a pragmatic approach and concentrating on the gravity of the defect in enlistment, rather than the nature of the recruiter misconduct. Despite even "fraudulent" misconduct by the recruiter, the Court was unwilling to declare the enlistment contract void if the enlistment was "not absolutely prohibited by law, regulation, or order." *Stone,* 8 M.J. at 141. Distinction between waivable and nonwaivable defects was not determinative. *United States v. Valadez,* 5 M.J. 470 (C.M.A.1978); *United States v. Wagner,* 5 M.J. 461 (C.M.A.1978). A regulatory disqualification not involving a fundamental defect such as age, duress, imposition, ignorance, or intoxication would not *per se* render the enlistment void. *Id.*

Although the regulatory disqualification in the present case is purportedly nonwaivable, no fundamental defect in the enlistment appears on the record. Appellant was of age and testified of no impediments beyond improper access to ASVAT answers. While the Court of Military Appeals in *United States v. Little,* 1 M.J. 476 (C.M.A. 1976), found sufficient recruiter misconduct to void the accused's enlistment where the recruiter improperly provided assistance to the accused with the Armed Forces Qualification Test, the recruiter in that case had also received reliable information that the accused was illiterate. We find no such problem in the present case. The accused testified that, although he had not graduated from high school, he was within a half-year of its completion and had obtained a "GED." Further, he attained unobjectionable results on a Classification and Assignment Test after his enlistment into the regular Marine Corps, satisfactorily completed the Navy's Parachute Rigger "A" School, gained the rank of Lance Corporal (E–3), and served successfully as a Flight Equipmentman for thirteen months before his first Article 15, UCMJ, punishment. Thus, we find no mental impairment which would have fundamentally disqualified appellant's enlistment. Further, we are convinced beyond a reasonable doubt that the court-martial had *in personam* jurisdiction over appellant.

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Chief Judge EOFF and Judge MIELCZARSKI concur.